[Cite as *Haviza v. Haviza*, 2017-Ohio-5615.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| ABIGAIL S. HAVIZA | : | |
| | : | |
| *Plaintiff-Appellee/Cross-Appellant* | : | Appellate Case No. 2017-CA-1 |
| | : | |
| | : | Trial Court Case No. 2013-DIV-531 |
| v. | : | |
| | : | (Appeal from Domestic Relations |
| CHRISTOPHER M. HAVIZA | : | Court) |
| | : | |
| *Defendant-Appellant/Cross-Appellee* | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of June, 2017.

. . . . . . . . . . .

SCOTT D. RUDNICK, Atty. Reg. No. 0000853, 121 West Third Street, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellee/Cross-Appellant

JENNIFER J. WALTERS, Atty. Reg. No. 0066610, 80 South Plum Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} This appeal arises from a decision of the Darke County Court of Common Pleas regarding numerous post-divorce motions filed by Christopher Haviza and his ex-wife, Abigail Haviza.[1] Christopher filed an appeal from the decision raising nine assignments of error. Abigail filed a cross-appeal asserting four assignments of error. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part and the matter is remanded to the trial court. Upon remand, the trial court shall order Christopher M. Haviza to return the master bathroom cabinet to Abigail S. Haviza.

## I. Facts and Procedural History

{¶ 2} The Havizas were married in 1995. They have two children, one of whom is still a minor, born as a result of the marriage. The parties were divorced in June 2015.

{¶ 3} Of relevance to this appeal, Abigail was designated as the residential parent and legal custodian of the parties' minor child. Christopher was awarded parenting time on alternate weeks. The parties were ordered to follow the Darke County Standard Visitation Guidelines regarding holidays and summer vacation. Christopher was ordered to pay child support in the amount of $153.58 per month. He was also ordered to provide health insurance coverage for the child.

{¶ 4} The divorce decree further provided that the parties were to determine who would retain the marital residence which had an appraised value of $266,000.00. Abigail was ordered to sell a 2008 Ford Expedition within 60 days with the proceeds to be divided

[1] For purposes of convenience, we will refer to the parties by their first names.

equally after an existing lien on the vehicle was paid.[2]   Personal property was ordered to be divided by the parties.

{¶ 5} In August 2015, Christopher filed a motion to reduce his child support obligation.   He also filed a motion for contempt based upon the claim that Abigail failed to make loan payments on the Ford Expedition.   Thereafter, on October 1, 2015, Christopher filed a motion seeking to have the trial court set a deadline for Abigail to refinance the mortgage on the marital residence.   On that same date he filed a motion to hold Abigail in contempt for her failure to sell the Ford Expedition.

{¶ 6} On October 7, 2015, Abigail filed a multi-part motion in which she sought to hold Christopher in contempt for violating the parenting time order.   The motion also sought additional parenting time as a remedy for the violation of the order.   The motion requested an order requiring Christopher to return or replace fixtures that were removed from the marital home.   The motion sought an order requiring Christopher to return personal property that was awarded to her but removed from the marital home when Christopher moved out.   Abigail's motion asked for a judgment against Christopher for the amount of unpaid mortgage indebtedness and real estate taxes which he incurred while occupying the marital residence.   Finally, the motion asked for an order permitting her to purchase the Ford Expedition for the sum of $11,000.

{¶ 7} A hearing was conducted on October 21, 2015 and November 25, 2015. The magistrate's decision was filed in January 2016.   With regard to the Ford Expedition, the magistrate found that while Abigail was late on two payments, she ultimately made those payments and, at the time of the hearing, had paid off the entire lien amount of

---

[2] No value was established for the vehicle because neither party wanted to retain it.

$7,474 owed on the vehicle. The magistrate further found that she had attempted to sell the vehicle, but was unsuccessful. Thus, the magistrate overruled Christopher's motion for contempt on those issues. The magistrate also permitted Abigail to purchase the vehicle for the sum of $11,000, and ordered her to pay Christopher the sum of $1,763 which represents his half of the equity in the vehicle.

{¶ 8} The magistrate's decision set a deadline for Abigail to refinance the mortgage on the marital residence. The magistrate further found that because Christopher occupied the marital residence for two months following the divorce decree, he should be responsible for the payment of the mortgage for those months. The magistrate also found that the parties should equally divide the cost of any unpaid real estate taxes.

{¶ 9} With regard to child support, the magistrate noted that at the time of the decree, neither party was fully employed, but had since started full-time jobs. Thus, the magistrate recalculated child support based upon the parties' current salaries. The magistrate also granted a 50% downward deviation to account for the parties' equal parenting time. Christopher's new child support obligation was increased to $166.24 per month.

{¶ 10} The magistrate found Christopher in contempt with regard to parenting time based upon the finding that Christopher kept the child for two successive weeks despite Abigail's attempt to take the child for her week of parenting time. However, the decision permitted Christopher to purge the contempt by complying with the parenting time schedule in the future.

{¶ 11} Finally, the magistrate ordered Christopher to return all of the items of personal property awarded to Abigail which were not in the marital residence when she

took possession. The magistrate also ordered Christopher to replace a cooktop deemed a marital residence fixture, and to pay for the replacement and installation of a thermostat he removed from the home. With regard to the remainder of the items which Abigail claimed had been removed from the home, the magistrate found they did not constitute fixtures and were thus subject to division.

{¶ 12} Both parties filed objections. The trial court modified the decision of the magistrate with regard to the personal property of the children. Specifically, the trial court awarded the parties' son a waterski shelf, and the daughter was awarded her armoire, daybed, toys and dolls. The children were permitted to determine where they wanted to locate their belongings. The trial court also stated that Christopher did not need to replace any of the items Abigail claimed as fixtures other than the cooktop and the thermostat. Otherwise, the trial court adopted the decision of the magistrate.

{¶ 13} Christopher filed a notice of appeal and Abigail filed a notice of cross-appeal.

## II. Ford Expedition

{¶ 14} Christopher's first and second assignments of error state:

THE TRIAL COURT ERRED IN FAILING TO FIND APPELLEE IN CONTEMPT FOR HER FAILURE TO SELL THE FORD EXPEDITION.

THE TRIAL COURT ERRED IN ORDERING APPELLEE TO PURCHASE THE FORD EXPEDITION FOR $11,000.

{¶ 15} Christopher contends that the trial court should have found Abigail in contempt because the evidence demonstrates that she did not comply with the

requirement that she sell the 2008 Ford Expedition within 60 days of the entry of the decree. In support, he argues that her efforts to sell the vehicle were minimal, and thus cannot be viewed as compliance with the court's order. Christopher also objects to the purchase price of $11,000 set by the court.

{¶ 16} We begin with the issue of contempt. "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Jenkins v. Jenkins*, 2012–Ohio–4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), citing *Wolf v. Wolf*, 1st Dist. Hamilton No. C–090587, 2010–Ohio–2762, ¶ 4. Clear and convincing evidence is the standard of proof in civil contempt proceedings. *Id., quoting Flowers v. Flowers*, 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972, ¶ 13. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 17} We review the trial court's decision whether to find a party in contempt under an abuse of discretion standard. *Wolf* at ¶ 4. The term "abuse of discretion" indicates that the attitude of the trial court is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). This standard is satisfied when there is no sound reasoning process that would support the trial court's decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 18} At the hearing, Christopher admitted that Abigail did put a "for sale" sign in the vehicle, although he testified that she only did so for about a week and the sign was difficult to see due to the vehicle's window tinting. Abigail admitted that she waited almost two weeks, until July 11, 2015, before trying to sell the Ford. She testified that she placed a for sale sign in the truck, and that she cleaned the vehicle and took pictures of it. She testified that she made two calls to a local radio show, known as Market Time Radio, to advertise the sale. Abigail testified that she subsequently began to utilize the internet. She advertised the vehicle on FaceBook and Craig's List, as well as two local websites known as "Darke County Rummage Sale" and "For Sale in Darke County." Tr. p. 69. Abigail testified that she called a car dealership that specializes in trucks, but the dealership was not interested. She testified that she originally priced the vehicle at $16,000 but eventually dropped the price to $14,000. She testified that she visited a car dealership to assess trade-in value, but that the values were too low. Abigail also testified that she then took the car to a CarMax dealership where she was offered $11,000. Abigail testified that she had researched the vehicle's value which, according to Kelly Blue Book, was between $10,000 and $13,000. Finally, she testified that she told her co-workers, family and friends about the sale.

{¶ 19} The magistrate denied the motion for contempt. In reviewing the magistrate's decision, the trial court stated that the transcript "shows minimal efforts which were barely done in a timely manner." Dkt. No. 128. However, the trial court adopted the magistrate's determination.

{¶ 20} Based upon the testimony presented at the hearing, we conclude that there was competent evidence upon which the magistrate could reasonably rely in finding that

Abigail made sufficient efforts to sell the vehicle, and that, therefore, a finding of contempt was not merited. Indeed, from our review of the record we conclude that Abigail made more than "minimal" efforts. We find no abuse of discretion in the decision to deny the motion for contempt.

{¶ 21} We next address the value of the vehicle. "The trial court enjoys broad discretion in determining the value of a marital asset; however, this discretion is not limitless." *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995). "Our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value." *Id.*

{¶ 22} Christopher testified that he had no opinion as to the value of the Ford, and admitted that he did not research valuation. However, he testified that the purchase price should be set at $14,500. When questioned about this price, Christopher stated, "I believe that's the difference between her initial number of [$]9,000 and my initial number of [$]20,000 for the value of the vehicle [during the divorce hearing]. So that's just a standard meeting in the halfway." Tr. p. 43. As noted above, Abigail testified that her valuation of the vehicle was based upon her research and upon the fact that she ultimately received an offer of $11,000 from a car dealership. We conclude that Christopher has failed to demonstrate an abuse of discretion.

{¶ 23} Christopher's first and second assignments of error are overruled.

### III. Child Support

{¶ 24} The third and fourth assignments of error asserted by Christopher state:

THE TRIAL COURT ERRED IN INCREASING APPELLANT'S CHILD SUPPORT OBLIGATION WHEN A MOTION TO REDUCE CHILD SUPPORT HAD BEEN FILED.

THE TRIAL COURT ERRED IN FAILING TO REDUCE APPELLANT'S CHILD SUPPORT OBLIGATION.

{¶ 25} Christopher contends that the trial court was limited to either reducing or maintaining his prior child support obligation because Abigail did not file a concurrent motion for an increase. He further contends that the trial court should have reduced his child support obligation to zero. In support, he argues that the child support obligation is inequitable because (1) the difference between the parties' income is less than $2,000 per year; (2) he is providing health insurance coverage for the minor child; and (3) the parties exercise equal parenting time.

{¶ 26} "Pursuant to R.C. 3119.79, when either party requests a modification of a child support order based upon a change in income, the court must recalculate the amount of support using the statutory guidelines, schedules, and worksheets." *L.B. v. T.B.*, 2d Dist. Montgomery No. 24441, 2011-Ohio-3418, ¶ 11. Thus, "courts must independently analyze the appropriateness of the imposition of guideline child support, whether it is at the stage of the initial order respecting the issue of child support, or at a later stage, after one or both of the parties has asked the court to revisit the issue." *Cameron v. Cameron*, 10th Dist. Franklin No. 04AP-687, 2005-Ohio-2435, ¶ 22, citing *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 679 N.E.2d 266 (1997). "If there has been a change in circumstances, the court may modify the support order in accordance with the statutory factors and guidelines." *L.B.* at ¶ 11.

**{¶ 27}** Consistent with the statute, the magistrate performed the child support calculation using the applicable schedule and worksheet. The child support worksheet showed that Christopher's new obligation was more than ten-percent greater than his previous obligation.[3] Thus, the court did not abuse its discretion in determining that a modification was appropriate.

**{¶ 28}** Christopher's motion "invoked anew the trial court's obligation to begin with the rebuttable presumption that guideline child support was in the child's best interests." *Quint v. Lomakoski*, 173 Ohio App.3d 146, 2007-Ohio-4722, 877 N.E.2d 738, ¶ 42 (2d Dist.). However, the magistrate, as permitted by R.C. 3119.23(D) and 3119.22, granted a downward deviation of 50% in recognition of the fact that the parties have equal parenting time with the child. Further, the child support worksheet accounts for the amount of the health insurance premiums paid by Christopher. Thus, we conclude that Christopher's claim that the amount of child support is inequitable lacks merit.

**{¶ 29}** Absent an abuse of discretion, a trial court's determination regarding a child support obligation will not be disturbed on appeal. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997). By filing his motion for a decrease in child support, Christopher brought the matter of child support squarely before the trial court. Upon complying with its statutory duty to recalculate the amount of support, the trial court determined that a modification was warranted. We find no abuse of discretion.

---

[3] R.C. 3119.79(A) provides that if the amount of support owed "as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount."

{¶ 30} Christopher's third and fourth assignments of error are overruled.

## IV. Parenting Time

{¶ 31} Christopher's fifth assignment of error states:

> THE TRIAL COURT ERRED IN FINDING DEFENDANT IN CONTEMPT FOR FAILURE TO ALLOW PARENTING TIME AS ORDERED.

{¶ 32} Christopher contends that Abigail failed to prove, by clear and convincing evidence, that he violated the parenting time orders

{¶ 33} There is competent, credible evidence in this record upon which the court could rely in determining that Christopher had the child in his custody from July 5 through July 12, 2015, and that he refused to allow Abigail to take the child on July 12. There is evidence that Abigail did not get physical custody of the child until July 19. Thus, Christopher had the child for two successive weeks despite the decree's order that the parties exercise week to week parenting time.

{¶ 34} While the evidence in this case consisted of the somewhat contradictory testimony by the parties, the magistrate was free to credit Abigail over Christopher. Indeed, the magistrate noted that Christopher exhibited "a general attitude, as is also reflected in the division of property problems discussed below, that he can decide how things will be handled." Dkt. No. 109. Thus, it is clear that the magistrate found Christopher's testimony lacked credibility.

{¶ 35} We conclude that the trial court did not err in finding that there was clear and convincing evidence that Christopher did not comply with the terms of the parenting orders.

**{¶ 36}** Christopher's fifth assignment of error is overruled.

## V. Mortgage

**{¶ 37}** Christopher's sixth assignment of error provides:

THE TRIAL COURT ERRED IN FINDING THAT APPELLANT SHOULD BE RESPONSIBLE FOR PAYMENT OF THE AUGUST MORTGAGE PAYMENT AND LATE FEES.

**{¶ 38}** Christopher contends he should not be required to pay for the August mortgage payment, along with any attendant late fees, on the marital residence.

**{¶ 39}** The record shows that Christopher maintained sole possession of the marital residence during the pendency of the divorce. And, as conceded by Christopher, he remained in the residence for sixty days after the entry of the divorce decree. We cannot say, on this record, that requiring Christopher to pay the mortgage for the month of August 2015 when he was in sole possession of, and living in, the home is inequitable. Thus, we cannot conclude that the trial court abused its discretion.

**{¶ 40}** The sixth assignment of error is overruled.

## VI. Personal Property

**{¶ 41}** The seventh and eighth assignments of error asserted by Christopher state:

THE TRIAL COURT ERRED IN FINDING THAT APPELLANT SHOULD RETURN TO APPELLEE CERTAIN TANGIBLE PERSONAL PROPERTY ITEMS.

THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY THE

COST OF THE NEW THERMOSTAT AND THE SERVICE INCURRED TO INSTALL IT.

{¶ 42} Christopher contends that the court abused its discretion by ordering the return of numerous items of personal property to Abigail, and by ordering him to reimburse her for the cost of installing a new thermostat in the marital residence.

{¶ 43} The following method for dividing personal property was set forth in the magistrate's trial decision and incorporated into the divorce decree:

The magistrate finds that all of the items on [Abigail's] Exhibit 4(a) [sic] should be considered marital property unless designated on the Exhibit as a gift to one of the parties and the Defendant did not disagree on Exhibit Z (aka Exhibit ZZ). For example, if an item was listed on 4(b) as a gift specifically to Chris, then it should be his separate property. If it is listed as a gift to Abby and Chris did not disagree on Exhibit Z (aka Exhibit ZZ), then it should be her separate property. Anything not agreed upon should be considered subject to division as the things were acquired during the marriage and neither party presented any evidence to corroborate his or her testimony. Both parties seem to agree that the padded chair in [the son's] room and the pink chair in [the daughter's] room were gifts directly to them. Fixtures should remain with the house. The children's toys are just that: the children's toys and should not be awarded to either party. All marital property shall be divided before [Christopher] vacates the former marital residence.

{¶ 44} At the hearing, Abigail introduced Exhibit 3 which sets forth a list of over 20

items of personal property that she testified were removed from the residence despite the fact that they belonged to her by virtue of this division provision. She also testified that Christopher removed a thermostat from the home.

{¶ 45} Christopher testified that three of the items on Exhibit 3 – two gladiator cabinets, a wheelbarrow and a tile saw - were gifts to him from his parents. He further testified that they were marked on Exhibit Z as gifts. Thus, he argues that they were awarded to him pursuant to the decree division method. He testified that the remaining items were in Abigail's possession. He also testified that the thermostat was a gift to him from his parents. He noted that he re-installed the home's original thermostat.[4]

{¶ 46} The magistrate's decision required Christopher to return all of the items listed on Exhibit 3, and to pay for all replacement and installation costs of a new thermostat. Following the parties' objections, the trial court modified the magistrate's decision to find that some of the items listed on Exhibit 3 belonged to the parties' children and that the children could determine where those items should be located. The trial court adopted the magistrate's decision on this issue in all other respects.

{¶ 47} From our review of the record, we find no abuse of discretion. We disagree with Christopher's conclusion that the cabinets, wheelbarrow and saw were acknowledged as gifts to him. While Christopher's Exhibit Z did designate them as gifts, they were not listed on Exhibit 4(b) as a gift. Thus, at best, they were items that were not agreed upon, and were subject to division.

{¶ 48} We also find that the magistrate was entitled to accept Abigail's testimony

---

[4] Abigail testified that the replacement thermostat, which she found dangling by its wires from a hole in the wall, did not work. Thus, she testified that she incurred costs because she was required to have it serviced.

that the items at issue were not in the marital residence when she took possession of the home. Further, we find no abuse of discretion with the requirement that Christopher, who did not request the thermostat at the final hearing, pay the costs related to the reinstallation of the thermostat.

**{¶ 49}** Accordingly, the seventh and eighth assignments of error are overruled.

## VII. Court Costs

**{¶ 50}** Christopher's ninth, and final, assignment of error states:

> THE TRIAL COURT ERRED IN REQUIRING APPELLANT TO PAY ALL
> COURT COSTS.

**{¶ 51}** Christopher objects to the decision of the trial court requiring him to pay the costs of the proceeding. In support, he notes that Abigail's motion had more than eight branches while he only filed four motions.

**{¶ 52}** Civil Rule 54(D) provides, "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The decision to award or to decline to award costs is a matter within the discretion of the trial court and absent an abuse of discretion will not be reversed on appeal. *Raab v. Wenrich*, 2d Dist. Montgomery No. 19066, 2001 WL 1782784, * 1 (Feb. 22, 2001).

**{¶ 53}** While Christopher contends that Abigail was not the prevailing party, we cannot agree as Abigail prevailed on most issues. Further, we cannot say that the award of costs constituted an abuse of discretion.

**{¶ 54}** The ninth assignment of error is overruled.

## VIII. Visitation

{¶ 55} Abigail's first cross-assignment of error states:

> THE TRIAL COURT ERRED IN FAILING TO IMPOSE SANCTIONS AS A RESULT OF THE CROSS-APPELLEE'S CONTEMPT AND TO AWARD CROSS-APPELLANT ADDITIONAL VISITATION TIME.

{¶ 56} Abigail contends that the trial court should have imposed sanctions against Christopher with regard to the violation of parenting time. She further contends that she should have been granted additional parenting time in order to make up for the time she missed as a result of Christopher's actions.

{¶ 57} The purpose of a civil contempt sanction is to benefit the complainant by compelling compliance with court orders. *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 11 and 16 (2d Dist.). However, we have not found, and Abigail has not cited any authority, mandating the imposition of a sanction.

{¶ 58} As previously noted, there is evidence in the record that Christopher had the child for two successive weeks in contravention of the decree. The magistrate and trial court found Christopher in contempt, but did not impose any sanction.

{¶ 59} We cannot say that the court abused its discretion by failing to impose a sanction or by denying the request for extra parenting time. We note that the violation of the order occurred immediately following the filing of the final decree and appears to have been an isolated incident.

{¶ 60} The first cross-assignment of error is overruled.

## IX. Real Estate Taxes

{¶ 61} Abigail's second cross-assignment of error is as follows:

THE TRIAL COURT ERRED IN FAILING TO ORDER CROSS-APPELLEE TO REIMBURSE CROSS-APPELLANT FOR REAL ESTATE TAXES WHICH HE HAD PAID FROM THE PARTIES' HELOC.

{¶ 62} Abigail contends that the court erred because it failed to order Christopher to reimburse her for real estate taxes he paid with proceeds from the parties' home equity line of credit. It appears from the record that this issue was raised prior to the entry of the final decree. However, the issue was not addressed in the final decree. Thus, Abigail included this issue in her post-decree motions. Abigail also contends that Christopher should have been required to pay half of the real estate taxes due for the time he occupied the marital home after the entry of the divorce decree.

{¶ 63} To the extent that this assignment of error involves an issue of taxes raised in the original divorce action, it is not properly before this court. Any problem with the decree should have been raised by direct appeal of the decree.

{¶ 64} With regard to the post-decree real estate taxes, the record indicates that these taxes were included in the mortgage payments made by the parties, and that those amounts were placed into an escrow account to be paid by the mortgagee when the tax bill came due. Christopher paid the July 2015 mortgage payment, and he was ordered to pay the August 2015 payment. Thus, any real estate taxes for which he would be liable were included in the mortgage payment he made in July 2015, and will be included in the payment for August 2015.

{¶ 65} The second cross-assignment of error is overruled.

**X. Master Bathroom Cabinet**

**{¶ 66}** The third cross-assignment of error asserted by Abigail states:

THE TRIAL COURT ERRED BY FAILING TO ORDER THE CROSS-APPELLEE TO RETURN TO THE CROSS-APPELLANT THE MASTER BATHROOM CABINETRY.

**{¶ 67}** Abigail contends that the magistrate and trial court erred by failing to order Christopher to return a cabinet she claims was a fixture in the master bathroom of the marital residence. She claims that, although she raised the issue, neither the magistrate nor the trial court addressed the issue.

**{¶ 68}** At the hearing, Abigail introduced Exhibit 5 which set forth a list of items she claims are fixtures that Christopher improperly removed from the marital residence. The list included a master bathroom cabinet, a thermador gas cooktop, custom closet shelving, garage wall shelving, a shoe rack in the garage, four ceiling pulley bike storage systems, a laundry room cabinet, and two walls of kitchen pantry shelving.

**{¶ 69}** The magistrate determined that the cooktop, which Christopher removed by sawing through a gas pipe, was the only item on the list constituting a fixture. The magistrate found that the remaining items were not fixtures and were subject to division. The trial court's decision adopted the finding that these items are not fixtures. The trial court further concluded that the items need not be returned to Abigail.

**{¶ 70}** The evidence in this record supports a finding that the Exhibit 5 items listed above were attached to the home by screws or nails.[5] During the pendency of the

---

[5] The exception is the master bathroom cabinet. While it was custom built to match the

divorce, neither party requested that these items be divided. None of the items were included on the lists of property to be divided at that time, and none of the items were brought to the attention of the court during the divorce hearing. Thus, it can be inferred that these items were intended by the parties to remain with the home and with the party that ultimately retained the home.

{¶ 71} The final decree of divorce did not make any reference to these items. And since there were no exhibits listing these items, it cannot be claimed that the decree's division method is applicable to these items. Since the decree was a final order from which no appeal was taken, the trial court did not, at the time of the post-decree hearing, have the ability to order or permit removal of this property from the home or to conclude that these items are now subject to division.

{¶ 72} However, Abigail only objects to the failure to return the master bathroom cabinet. Thus, we conclude that it is the only item on the Exhibit 5 list that must be returned.

{¶ 73} Accordingly, the third cross-assignment of error is sustained.


**XI. Lawn and Lawnmower**

{¶ 74} Abigail's fourth cross-assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO AWARD CROSS-APPELLANT COMPENSATION FOR THE DAMAGES TO THE LAWN AND LAWNMOWER CAUSED BY CROSS-APPELLEE DURING HIS EXCLUSIVE

---

other cabinetry in the bath, a picture of the bathroom supports a finding that the cabinet was free-standing.

USE AND OCCUPANCY OF THE REAL PROPERTY.

**{¶ 75}** Abigail contends that when she took possession of the marital residence in 2015 she found damage to the lawn. She also claims that the riding lawnmower awarded to her was not working, and that she was required to have it repaired. She contends that the trial court should have awarded her damages for these issues.

**{¶ 76}** A review of the record shows that evidence was presented of several spots of discolored grass at the marital home. Christopher testified that he fertilized the lawn while he was living there. He testified that the fertilizer could have burned the grass in several areas because it did not rain after the application.

**{¶ 77}** The trial court found that there was no evidence that Christopher intended to damage the lawn. We cannot say that this finding is erroneous. Further, we note that there is no evidence that the damaged areas would not recover. In other words, there was no evidence that it was necessary to expend monies to resod or reseed in order for the area to regrow. Thus, we conclude that the trial court did not abuse its discretion in denying Abigail's motion for damages.

**{¶ 78}** We further cannot conclude there is evidence in the record to indicate that Christopher did anything to cause the riding mower to stop working. Indeed, it is not entirely clear that it was not working. While Abigail did have the mower serviced, there is no evidence that the work performed constituted anything other than routine maintenance. Thus, we conclude that the trial court did not err in denying this request for damages.

**{¶ 79}** Abigail's fourth cross-assignment of error is overruled.

## XII. Conclusion

**{¶ 80}** All of Christopher's assignments of error are overruled. Abigail's third assignment of error is sustained. Her remaining assignments of error are overruled. Accordingly, the judgment of the trial court is affirmed in part and reversed in part. This matter is remanded to the trial court. Upon remand, the trial court shall order Christopher to return the master bathroom cabinet to Abigail.

. . . . . . . . . . . . .

HALL, P.J. and DONOVAN, J., concur.

Copies mailed to:

Scott D. Rudnick
Jennifer J. Walters
Hon. Jonathan P. Hein