[Cite as *Miami Twp. Bd. of Trustees v. Powlette*, 2022-Ohio-3459.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | |
|---|---|
| MIAMI TOWNSHIP BOARD OF TRUSTEES | : |
| | : |
| | : Appellate Case No. 29369 |
| Plaintiff-Appellee | : |
| | : Trial Court Case No. 2019-CV-5444 |
| v. | : |
| | : (Civil Appeal from |
| DARREN POWLETTE, et al. | : Common Pleas Court) |
| | : |
| Defendants-Appellants | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2022.

. . . . . . . . . . .

EDWARD J. DOWD, Atty. Reg. No. 0018681 and CHRISTOPHER T. HERMAN, Atty. Reg. No. 0076894, 8163 Old Yankee Street, Suite C, Dayton, Ohio 45458
    Attorneys for Plaintiff-Appellee

GREGORY S. PAGE, Atty. Reg. No. 0065264, 7501 Paragon Road, Dayton, Ohio 45459
    Attorney for Defendants-Appellants

. . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Defendants-appellants Darren Powlette and Stoney Hill Rustic Weddings LLC appeal from the summary judgment rendered and a permanent injunction entered against them.[1]  For the following reasons, we affirm.

## I.  Facts and Procedural Background

**{¶ 2}** In May 2016, Powlette purchased a 26-acre property located at 7757 Upper Miamisburg Road in Miami Township.  The property is situated in an agricultural district, making it subject to Article 8 of the Miami Township Zoning Resolution ("the Zoning Resolution").

**{¶ 3}** At some point after the purchase, Powlette began construction of a two-story structure he referred to as a "horse barn."  On October 4, 2017, Powlette filed a zoning form entitled "Declaration of Intent - Agricultural Exemption," in which he stated that the barn would be used for viticulture and storage of agricultural products.  Section 307 of the Zoning Resolution permits applicants to file this form in lieu of seeking a zoning certificate regarding structures used exclusively for agricultural or agritourism purposes. The purpose of the form is to exempt such structures from the provisions of the Zoning Resolution.

**{¶ 4}** In early 2018, the Township learned that Powlette was using online advertising to promote the property as a venue for weddings and other special events. An investigation ensued, and on May 8, 2018, a township zoning inspector issued a notice

---

[1] For ease of reference, and because Stoney Hill Rustic Weddings LLC is wholly owned by Powlette, we will refer to the appellants jointly as Powlette.

of violation for Powlette's use of the barn as a wedding venue. Powlette appealed the violation notice to the Township Board of Zoning Appeals ("BZA"). Powlette also filed a second agricultural exemption form in which he stated that the barn would be used for agriculture, agritourism, hay storage, turkeys, chickens and viticulture.

{¶ 5} After conducting a hearing, the BZA affirmed the inspector's decision. Thereafter, Powlette filed an administrative appeal in the Montgomery County Court of Common Pleas. The court upheld the BZA decision. In doing so, the court concluded that the evidence in existence on the date of the notice of violation demonstrated that Powlette's use of the barn did not constitute agritourism and that the barn was not used for viticulture or storage of agricultural products. Powlette did not appeal the trial court's decision. *See* Montgomery C.P. No. 2018-CV-4129 (Decision Order, May 30, 2019).

{¶ 6} On June 25, 2018, in a related case, the Montgomery County Building Regulation Division ("MCBRD") issued a stop work order regarding the barn. *See Powlette v. Board of Bldg. Appeals Dayton*, 2020-Ohio-5357, 162 N.E.3d 964 (2d Dist.). The order stated: "According to our investigation, you have constructed a barn without any permits or inspections, and are using it as a wedding chapel, which is a place of public assembly and is regulated by the Ohio Building Code." *Id.* at ¶ 2. The stop work order was upheld by the Board of Building Appeals and, subsequently, by the Montgomery County Court of Common Pleas. Powlette then appealed to this court.

{¶ 7} In affirming the decision of the trial court, we noted that the evidence supported a finding that the barn was used for "both agricultural and public assembly purposes." *Id.* at ¶ 52. However, we also stated:

Powlette hosts weddings at his barn, and he has been ordered to stop work by the MCBRD, cited by the BZA, and cited by the Fire District. The Fire District citations were affirmed by the State Board of Building Appeals and remain in effect. [The Chief Building Officer] testified that there was an unapproved or impermissible change of use regarding the barn, and we conclude that the barn cannot retain its agricultural exemption under these circumstances, given the issues of fire safety and life safety for the attendees of the events in the barn. In other words, the barn is a nuisance, and when MCBRD became aware of the nature of its use, it correctly issued the stop work order and essentially negated the exemption. The trial court did not err in affirming the BBA's determination that Powlette cannot escape application of the Ohio Building Code to his barn, since it is clearly an assembly occupancy and promoted as such. * * *

*Id.* at ¶ 55.

{¶ 8} On November 18, 2019, the Miami Township Board of Trustees ("Trustees") filed a complaint seeking a permanent injunction against Powlette to enjoin the continuing use of the barn for weddings and other "special events." After conducting discovery, both parties filed motions for summary judgment.

{¶ 9} On December 13, 2021, the trial court granted the Trustees' motion for summary judgment and denied Powlette's motion for summary judgment. In its Decision and Entry, the trial court stated:

* * * The Court finds that the distinctions in the applicable zoning

provisions are best understood by the purpose of the activity. In other words, "agritourism" addresses "agriculturally related" activities that allow the public to "observe, participate in, or enjoy" the agricultural activity. It is not that the activity brings people to the farm where they may observe animals, like alpacas or chickens or sit on bales of hay while they are there for a social event like a wedding. The definition is limited to "agriculturally related" activity such as "you-pick operations or farm markets . . . that allows or invites members of the general public to observe, participate in, or enjoy *that* activity." * * *

The Court finds the plain language principle controls and there is no ambiguity that would require strictly construing the language against the Trustees or against the zoning authority. Furthermore, the Court finds that there is no material issue of fact that the defendants are not using the barn "primarily for vinting and selling wine and that [the barn] [is] located on land any part of which is used for viticulture." Thus, the zoning authority over the defendants' barn is not prohibited by R.C. 519.21(A).

(Emphasis sic.)

{¶ 10} Based upon its summary judgment decision, the trial court subsequently entered a final judgment entry which also imposed an injunction; it "ENJOINED AND PROHIBITED [Powlette] from renting, leasing, or otherwise operating for a fee, the barn located at 7757 Upper Miamisburg Road, Miami Township, Montgomery County, Ohio for weddings, receptions, graduation parties, or other celebratory events[.]" Final Judgment

Entry; Injunction (Dec. 29, 2021).

{¶ 11} Powlette appeals.

## I.     Summary Judgment Decision

{¶ 12} The first assignment of error states as follows:

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF-APPELLEE AND BY FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLANTS.

{¶ 13} Powlette contends that the trial court erred in rendering summary judgment against him.

{¶ 14} Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997). Appellate review of summary judgment decisions is conducted under the de novo standard. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997). "We review the judgment independently and without deference to the trial court's decision." (Citation omitted.) *Id.*

{¶ 15} Because Ohio townships have no inherent or constitutionally granted

zoning power, a township's zoning authority "is limited to that which is specifically conferred by the General Assembly." (Citation omitted.) *Terry v. Sperry*, 130 Ohio St.3d 125, 2011-Ohio-3364, 956 N.E.2d 276, ¶ 18.   To that end, R.C. 519.02 grants townships the power to adopt zoning regulations regulating building and land usage.   However, that power is limited by R.C. 519.21(A) which states:

> Except as otherwise provided * * *, sections 519.02 to 519.25 of the Revised
> Code confer no power on any township * * * to prohibit the use of any land
> for agricultural purposes or the construction or use of buildings or structures
> incident to the use for agricultural purposes of the land on which such
> buildings or structures are located, including buildings or structures that are
> used primarily for vinting and selling wine and that are located on land any
> part of which is used for viticulture * * *.

{¶ 16} "In other words, R.C. 519.21(A) provides two circumstances under which the use of a property is exempt from township zoning regulations: (1) the property is used for agricultural purposes or (2) the construction or use of buildings or structures on the property is incident to an agricultural use of the land."   *Terry* at ¶ 21.   Furthermore, R.C. 519.21(C)(4) provides that township zoning laws may not prohibit agritourism in a district zoned for agriculture.

{¶ 17} For purposes of Ohio's township zoning statutes, R.C. 519.01 defines agriculture to include the following:

> [F]arming; ranching; algaculture meaning the farming of algae; aquaculture;
> apiculture; horticulture; viticulture; animal husbandry, including, but not

limited to, the care and raising of livestock, equine, and fur-bearing animals; poultry husbandry and the production of poultry and poultry products; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; and the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production.

{¶ 18} "Agritourism" means "an agriculturally related educational, entertainment, historical, cultural, or recreational activity, including you-pick operations or farm markets, conducted on a farm that allows or invites members of the general public to observe, participate in, or enjoy that activity." R.C. 901.80(A)(2).

{¶ 19} Powlette first contends that the trial court erred by failing to find that the use of the barn was incident to the agricultural use of the land and thus exempt from regulation under R.C. 519.21(A). The question of whether a building or structure is "incident" to agricultural use of land is a question of fact. *Siebenthaler Co. v. Beavercreek Twp. Bd. of Zoning Appeals*, 2d Dist. Greene No. 2009-CA-36, 2009-Ohio-6595, ¶ 3. The trial court did not address this issue.

{¶ 20} Powlette notes that he presented evidence that the lower portion of the barn is used to store farm equipment and to house his alpacas on days when the temperature is extremely hot or cold. He further asserts the evidence demonstrated that he uses the loft in the upper portion of the barn to store hay, which he uses for his livestock. Thus,

he argues the facts mandate a finding that the barn is incident to the agricultural use of the land.

{¶ 21} The record demonstrates the barn is a two-story structure. The upper portion of the barn, including the portion Powlette refers to as a loft, is approximately 5,000 square feet, and the lower level is approximately 3,000 square feet. The upper level of the barn is the portion used for events. It has outdoor decks overlooking the property, decorative windows, chandeliers, a fire alarm system, electrical systems, and heating and cooling systems. This part of the barn also has two restrooms and a staging area for bridal parties. It also has what Powlette refers to as a "prep area" with tile floors, cabinets and countertops, and a refrigerator. In his deposition, Powlette indicated the barn had accommodated parties of 200 people. The only possible agricultural purpose for which Powlette claims to use the upper portion is for storing hay in the loft. However, the record shows that any hay in the loft was placed there to be utilized as decorations or seating for events, rather than for any agricultural use such as feeding animals. Thus, it is clear on this record that the upper portion of the barn was constructed as a venue for events and is not being used incident to any agricultural purpose. Accordingly, we conclude that the upper portion of the barn is subject to zoning regulation. As such, the trial court's summary judgment decision is not subject to reversal on this basis.

{¶ 22} Powlette further asserts that the use of the barn for weddings and other events constitutes agritourism. In support, he focuses on the definition of agritourism as an educational, entertainment, historical, cultural, or recreational activity. According to Powlette, the record contains evidence that he "regularly educates his guests both young

and old about the animals on his farm, the products the farm produces, as well as the history of farm structures and construction techniques used in the building of those structures." He also contends that the guests are entertained by interacting with the animals on the farm and by participating in hay rides, that weddings in rural areas have historically taken place on family farms, and that "our culture, particularly in this region, is shifting towards hosting weddings in rustic, scenic settings rather than at religious institutions." Finally, he asserts that "[t]he opportunity to gather with friends and family in a rural setting, to interact with and feed farm animals, to enjoy a hayride, or simply being on a farm" constitutes recreation.

{¶ 23} As pointed out by the trial court, a wedding is not, in itself, an agriculturally related activity. And we cannot discern any connection between the use of the upper portion of the barn as a wedding venue and any agricultural activity occurring on the property. Indeed, the record indicates that in order to partake of the agriculturally related activities promoted as agritourism, guests would necessarily have to be outside of the barn.[2] Simply put, there is no evidence that this use of the barn is incident to any agricultural use of the property. Instead, the barn was built in order to serve as an event venue in a rural, agricultural setting.

{¶ 24} Therefore, we conclude the trial court did not err in determining Powlette's use of the barn for weddings and other celebratory events did not constitute agritourism. Consequently the trial court did not err in rendering summary judgment against Powlette and in favor of the Township.

---

[2] While Powlette claimed to give lectures about historical farm building techniques, the record shows this is done with regard to a separate, older barn on the property.

**{¶ 25}** The first assignment of error is overruled.

## II.    Injunction Is Not Overly Broad or Vague

**{¶ 26}** Powlette's second assignment of error states:

THE INJUNCTION ISSUED BY THE TRIAL COURT IS OVERBROAD AND WRONGFULLY ENJOINS THE USE OF PROPERTY ACTIVITIES THAT WERE NOT BEFORE THE COURT

**{¶ 27}** The standard of review for this court regarding the granting of an injunction by a trial court is whether the trial court abused its discretion. *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 269, 747 N.E.2d 268 (1st Dist.2000). "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 28}** Powlette complains that the injunction entered against him is too broad because it enjoins all "future activity when no Court has determined that the use of [the] barn for celebratory events could NEVER constitute agritourism." It appears this assignment of error is premised on the belief that the trial court has enjoined all future activity even if it conflicts with the Supreme Court's ruling that buildings used for vinting can also be used for celebratory events. *See Litchfield Twp. Bd. of Trustees v. Forever Blueberry Barn, L.L.C.*, 160 Ohio St.3d 70, 2020-Ohio-1508, 153 N.E.3d 63.

**{¶ 29}** We disagree, and we note that should Powlette establish a vineyard and vinting operation in the barn, he would be free to seek a dissolution of the injunction.

However, unless and until such a use is established, this argument is speculative. Therefore, Powlette has failed to demonstrate an abuse of discretion with regard to the terms of the injunction. Accordingly, the second assignment of error is overruled.

### III.     Conclusion

{¶ 30} Both of Powlette's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Edward J. Dowd
Christopher T. Herman
Gregory S. Page
Hon. Richard S. Skelton