[Cite as *Miami Twp. Bd. of Trustees v. Powlette*, 2023-Ohio-2890.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MIAMI TOWNSHIP BOARD OF TRUSTEES | : | |
| | : | |
| | : | C.A. No. 29596 |
| Appellee | : | |
| | : | Trial Court Case No. 2019 CV 05444 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| DARREN POWLETTE, ET AL. | : | Court) |
| | : | |
| Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 18, 2023

. . . . . . . . . . .

DAWN M. FRICK, CHRISTOPHER T. HERMAN, & NATHANIEL W. ROSE, Attorneys for Appellee

GREGORY S. PAGE, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Darren Powlette appeals from a judgment of the Montgomery County Court of Common Pleas that held him in contempt and sanctioned him $50,000 for violating an order which prohibited the use of a barn for celebratory

events. For the reasons that follow, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

## I. Facts and Procedural History

{¶ 2} The legal dispute between Powlette and the Miami Township Board of Trustees regarding the use of a barn located at 7757 Upper Miamisburg Road has been ongoing since at least 2018. A history of the litigation was compiled in our prior opinion, *Miami Twp. Bd. of Trustees v. Powlette*, 2022-Ohio-3459, 197 N.E.3d 998 (2d Dist.), and will be the basis for the facts here.

{¶ 3} In May 2016, Powlette purchased the 26-acre property located at 7757 Upper Miamisburg Road in Miami Township. The land is situated in an agricultural district, making it subject to Article 8 of the Miami Township Zoning Resolution.

{¶ 4} At some point after the purchase, Powlette began construction of a two-story structure he referred to as a "horse barn." On October 4, 2017, Powlette filed a zoning form entitled "Declaration of Intent - Agricultural Exemption," in which he stated that the barn would be used for viticulture (the cultivation and harvesting of grapes) and storage of agricultural products. Section 307 of the Zoning Resolution permits applicants to file this form in lieu of seeking a zoning certificate regarding structures used exclusively for agricultural or agritourism purposes. The intent of the form is to exempt such structures from the provisions of the Zoning Resolution.

{¶ 5} In early 2018, the Township discovered that Powlette was using online advertising to promote the property as a venue for weddings and other special events. An investigation ensued, and on May 8, 2018, a township zoning inspector issued a notice

of violation for Powlette's use of the barn as a wedding venue. Powlette appealed the violation notice to the Township Board of Zoning Appeals ("BZA"). Powlette also filed a second agricultural exemption form in which he stated that the barn would be used for agriculture, agritourism, hay storage, turkeys, chickens, and viticulture.

{¶ 6} After conducting a hearing, the BZA affirmed the inspector's decision. Powlette then filed an administrative appeal in the Montgomery County Court of Common Pleas. The court upheld the BZA's decision. The court concluded that the evidence in existence on the date of the notice of violation demonstrated that Powlette's use of the barn did not constitute agritourism and that the barn was not used for viticulture or storage of agricultural products. Powlette did not appeal the trial court's decision.

{¶ 7} On June 25, 2018, in a related case, the Montgomery County Building Regulation Division ("MCBRD") issued a stop work order regarding the barn. The order stated: "According to our investigation, you have constructed a barn without any permits or inspections, and are using it as a wedding chapel, which is a place of public assembly and is regulated by the Ohio Building Code." The stop work order was upheld by the Board of Building Appeals and, subsequently, by the Montgomery County Court of Common Pleas. Powlette then appealed to this court. We affirmed. *Powlette v. Board of Bldg. Appeals Dayton*, 2020-Ohio-5357, 162 N.E.3d 964 (2d Dist.)

{¶ 8} On November 18, 2019, the Miami Township Board of Trustees filed a complaint seeking a permanent injunction against Powlette to enjoin the continuing use of the barn for weddings and "special events." Both sides filed motions for summary judgment. In late December 2021, the trial court granted the Trustees' motion and denied

Powlette's motion. Based on the summary judgment decision, the court imposed an injunction which read:

> Now therefore, it is hereby ORDERED, ADJUDGED, AND DECREED that Defendants, Darren Powlette and Stoney Hill Rustic Wedding, LLC (including officers, agents, servants, and employees, attorneys and those persons in active concert or participation with them), are ENJOINED AND PROHIBITED from renting, leasing, or otherwise operating for a fee, the barn located at 7757 Upper Miamisburg Road, Miami Township, Montgomery County, Ohio, for weddings, receptions, graduation parties, or other celebratory events; it is FURTHER ORDERED that Defendants shall pay the costs of this action and this Court will retain jurisdiction for the purpose of enforcing this Judgment.

Decision and Entry (December 29, 2021).

{¶ 9} Powlette appealed, challenging the trial court's summary judgment decisions and the injunction. We affirmed. *Miami Twp. Bd. of Trustees v. Powlette*, 2022-Ohio-3459, 197 N.E.3d 998 (2d Dist.).

{¶ 10} In late May 2022, the Trustees filed a show cause motion with the trial court alleging that, despite the injunction, Powlette continued to host events at the barn. The court heard from Powlette at a June 1, 2022 hearing; he admitted to taking deposits for future events and hosting celebratory events at the barn even after the injunction was put in place. He claimed, however, that once the show cause motion was filed, he had refunded the money received and the celebrations had been held at no cost to the parties.

He further asserted that he was under the impression he could host events because his appeal of the injunction had not yet been decided by this Court. In addition to the testimony of Powlette, the Trustees presented bank statements, Venmo activity, and photos/videos purporting to show that events had taken place at the barn.

{¶ 11} On August 30, 2022, the trial court held Powlette in contempt for hosting celebratory events at the barn in deliberate and intentional defiance of the injunction. The entry specifically stated that Powlette had "engaged in some type of 'game playing' with the specific intent to 'get around' the Court's Order. Get around this: Sanction of Fifty Thousand Dollars payable within 30 days to Plaintiff."

{¶ 12} Powlette has appealed that judgment and raises three assignments of error. We will discuss them in an order that facilitates our analysis.

## II.　　Violation of the Court's Order

{¶ 13} In his first and second assignments of error, Powlette argues that the trial court abused its discretion by holding him in contempt because he had not violated the December 29, 2021 injunction. Relatedly, he asserts that it was error for the trial court to use the "clear and convincing" standard of civil contempt when the sanction was actually criminal in nature.

{¶ 14} The first step in our analysis is to determine whether the sanction imposed by the trial court was civil or criminal in nature. From there, we will use the requisite standard to determine if the trial court erred in finding that Powlette had violated the injunction.

{¶ 15} Contempt of court is defined as disobedience of a judicial order. *Windham*

*Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), syllabus. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Id.* This contempt power is inherent in a court as it is necessary for the exercise of judicial functions. *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988); *Hale v. State*, 55 Ohio St. 210, 213, 45 N.E. 199 (1896). "[T]he purpose of the law of contempt is to ensure the effective administration of justice and to secure compliance with the court's lawful orders." 17 Ohio Jurisprudence 3d, Contempt, Section 2. The essential element of a contempt proceeding is that the individual facing the contempt charge has obstructed the administration of justice in some way. *Martin v. Martin*, 2008-Ohio-6336, 903 N.E.2d 1243, ¶ 20 (2d Dist.).

{¶ 16} A trial court's decision to find a party in contempt is reviewed for an abuse of discretion. *Schutz v. Schutz*, 2017-Ohio-695, 85 N.E.3d 481, ¶ 52 (2d Dist.). To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

<u>Civil Contempt</u>

{¶ 17} "Civil contempt sanctions involve a conditional penalty, designed for remedial or coercive purposes[,] and are often employed to compel obedience to a court order. * * * They are characterized as violations against the party for whose benefit the order was made." (Citations omitted.) *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 15. *See also Roberts v.*

*Farrell*, 2023-Ohio-1109, 212 N.E.3d 432 , ¶ 17 (3d Dist.).

{¶ 18} A contempt fine is considered civil and remedial if it coerces a party into compliance with the court's order or compensates the complainant for losses sustained. *Id. See also State v. Baumgartner*, 6th Dist. Ottawa No. OT-06-046, 2008-Ohio-971, ¶ 66 ("A civil contempt penalty generally confers a benefit upon a party."). "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Id.* Once the contemnor purges the contempt, any sanction will be discontinued as the contemnor has complied with the order. 17 Ohio Jurisprudence 3d, Contempt, Section 10. Because of this, in civil contempt proceedings, the contemnor is said to "carry the keys of his prison in his pocket, * * * since he will be freed if he agrees to do as ordered." (Citations omitted.) *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980).

{¶ 19} "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of the order." *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 14. "Clear and convincing evidence is the standard of proof in civil contempt proceedings." *Id.*, quoting *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972, ¶ 13. It is the level of proof which would "cause a trier of fact to develop a firm belief or conviction as to the facts sought to be proven." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *Haviza v. Haviza*, 2d Dist. Darke No. 2017-CA-1, 2017-Ohio-5615, ¶ 16.

Criminal Contempt

**{¶ 20}** Criminal contempt sanctions are unconditional, punitive, and designed to vindicate the authority of the court. *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 14. Criminal contempt requires proof of a purposeful, willing, or intentional violation of a trial court's order. Thus, in cases of criminal contempt, it must be shown that the alleged contemnor intended to defy the court. 17 Ohio Jurisprudence 3d, Contempt, Section 11.

**{¶ 21}** A penalty for criminal contempt may take the shape of an absolute fine for a specific amount or a determinate period of confinement. *Geary v. Geary*, 2015-Ohio-259, 27 N.E.3d 877, ¶ 44 (5th Dist.), citing *Executive 200*, 64 Ohio St.2d at 253, 416 N.E.2d 610. Many of the constitutional safeguards necessary for criminal trials are also required in criminal contempt proceedings, and guilt must be proven beyond a reasonable doubt. *Executive 200* at 252.

Analysis

**{¶ 22}** In this case, after a full evidentiary hearing, the trial court issued a judgment that stated, in relevant part:

[T]he Court finds by clear and convincing evidence that the defendants have operated the barn located at 7757 Upper Miamisburg Road, Miami Township for celebratory events in defiance of this Court's injunction. In fact, this Court specifically finds Mr. Powlette disobeyed the Court's December 29, 2021 Order and that the evidence demonstrates intentional disregard of the Court's Order. In certain respects, the Court finds Mr. Powlette's

conduct reprehensible. It appears to this Court and the Court specifically finds that the Defendant Powlette engaged in some type of "game playing" with the specific intent to "get around" the Court's Order. Get around this: Sanction of Fifty Thousand Dollars payable within 30 days to Plaintiff. Attorney Fees to be awarded to Plaintiff[.]

Decision and Entry (August 30, 2022).

{¶ 23} Both parties agree that, based on the "clear and convincing evidence" language, the trial court likely intended Powlette's sanction to be civil in nature. Further, the Trustees' show cause order asked that the court hold a hearing on the matter, and in the event Powlette was found in contempt, to impose a fine against him "to encourage compliance with the court order." The goal of the Trustees was not to have the court punish Powlette, but instead to encourage compliance. The Trustees, then, urge us to defer to the "court's intention to impose a civil sanction."

{¶ 24} Powlette, on the other hand, points out that even though the trial court used the "clear and convincing" civil contempt standard, there is other language in the entry – "the Court specifically finds that * * * Powlette engaged in some type of 'game playing' with the specific intent to 'get around' the Court's Order. **Get around this: Sanction of Fifty Thousand Dollars** payable within 30 days to Plaintiff" – that looks a lot like a criminal contempt sanction. We agree.

{¶ 25} The sanction itself bears little resemblance to a civil contempt sanction. A civil contempt sanction coerces a party into compliance with the court's order or compensates the complainant for losses sustained. There is no evidence of that here.

When the court issued its sanction, it did not craft it in a typical coercive way, i.e., "you will be fined *X* dollars every day until you stop violating the order." Instead of offering a way for Powlette to purge the contempt, the trial court gave a flat, one time fine of $50,000. There was no indication that there would be more imposed if there were continued violations; it was just a large sanction. Thus, we cannot say that the sanction imposed upon Powlette was coercive. Neither can we conclude that it compensated the Trustees for any loss sustained because they did not suffer any monetary loss. Powlette was purportedly violating the township's zoning regulations, but in doing so, it did not come at a monetary cost to the Trustees (notwithstanding attorney fees, which were awarded in this case). Without suffering a monetary loss, the Trustees could not be compensated without enjoying a windfall – in this case, $50,000.

{¶ 26} While the sanction looks little like a civil one, it does bear a striking resemblance to a criminal sanction. A criminal contempt sanction takes the form of an absolute fine for a specific amount, is punitive in nature, and is designed to vindicate the court's authority; all those characteristics are present here. The court imposed a $50,000 fine on Powlette without any way to reduce the amount if he came back into compliance with the injunction and, as we already discussed, the Trustees were not being compensated for any money lost, so the sanction was punitive in nature. The biggest indication that the sanction in this case was criminal, though, was the language used by the court in its judgment entry. It wrote:

> [T]he Court finds Mr. Powlette's conduct reprehensible. It appears to this
>
> Court and the Court specifically finds that the Defendant Powlette engaged

in some type of "game playing" with the specific intent to "get around" the

Court's Order. Get around this: Sanction of Fifty Thousand Dollars[.]

Decision and Entry (August 30, 2022). Based on its choice of words, there is little doubt that the trial court was angry with Powlette for not taking the December 2021 injunction seriously, and hence, not taking the court seriously. We see the sanction as being clearly designed to vindicate the court's authority.

{¶ 27} The Trustees contend that while the $50,000 sanction appears to be an unconditional or absolute fine, chosen because the trial court was angry at Powlette, it was more targeted than that. According to evidence presented at the hearing, Powlette had profited at least $38,000 in the first half of 2022 from violations of the injunction. The $50,000 sanction served to purge Powlette of his gains and incentivized him to stop hosting events. This is, no doubt, a plausible explanation (and was perhaps even the reasoning of the court), but there was no explanation of it in the judgment entry.

{¶ 28} Having found that Powlette's contempt sanction was criminal in nature, we must conclude that the trial court erred by applying the "clear and convincing" standard of proof for civil contempt while imposing a criminal contempt sanction. Powlette's second assignment of error is sustained.

{¶ 29} As to the first assignment of error, regarding whether Powlette violated the injunction, we find it to be moot in light of our finding regarding the second assignment of error. Upon remand, as further outlined below, the court may determine if Powlette clearly and convincingly violated the injunction, as in civil contempt, or if he violated it beyond a reasonable doubt, as in criminal contempt.

**{¶ 30}** We find the third assignment of error, which argues the $50,000 sanction was unreasonable, to be moot as well, because the entirety of the court's judgment will be reversed.

### III.    Conclusion

**{¶ 31}** Having determined that the trial court erred by imposing a criminal contempt sanction while using the clear and convincing standard, we reverse the judgment of the trial court and remand the case for further proceedings in accordance with this Opinion. Upon remand, the trial court is free to decide that it wants the contempt sanction to be civil in nature, and in doing so, it may craft a sanction that coerces Powlette into compliance with the order and gives him an opportunity to purge the contempt. On the other hand, the court may choose to issue a criminal contempt sanction similar to the current one. However, in order to do so, the court must find beyond a reasonable doubt that Powlette violated the injunction and, before the new hearing, it must inform him of the constitutional rights at stake in a criminal contempt setting, as many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings. *See State v. Brandon*, 2d Dist. Greene No. 2006-CA-137, 2008-Ohio-403, ¶ 11.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.