[Cite as *Washington Mut. Bank v. Beatley*, 2020-Ohio-4658.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Washington Mutual Bank, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-614 |
| v. | : | (C.P.C. No. 06CV-9066) |
| Jack K. Beatley et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants | : | |
| JPMorgan Chase Bank, N.A., | : | |
| Intervenor-Appellee. | : | |

D E C I S I O N

Rendered on September 29, 2020

**On brief**: *Kevin E. Humphreys*, for appellants.

**On brief**: *Brickler & Eckler*, *LLP,* and *Daniel C. Gibson*, for intervenor-appellee.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendants-appellants, Jack K. Beatley and 64 W. Northwood Avenue, LLC (collectively "appellants"), from a judgment of the Franklin County Court of Common Pleas overruling appellants' objections to a magistrate's decision denying their motion for contempt against intervenor-appellee, JPMorgan Chase Bank, N.A. (hereafter "Chase").

{¶ 2} On July 14, 2006, Washington Mutual Bank, N.A. (hereafter "Washington Mutual"), filed a complaint in foreclosure, naming as defendants Jack K. Beatley (individually "Beatley"), 64 W. Northwood Avenue, LLC, and Don Breckenridge. The

complaint alleged that Washington Mutual was the holder of a note and mortgage secured by property located at 64 W. Northwood Avenue, Columbus, and that Beatley was in default.

{¶ 3}   On September 1, 2006, appellants filed a motion to dismiss the complaint, pursuant to Civ.R. 12(B), asserting that Washington Mutual lacked standing to bring the action because its name was an unregistered fictitious name as defined under R.C. 1329.01.  By decision and entry filed October 26, 2006, the trial court granted the motion to dismiss.

{¶ 4}   In 2008, following appeals by the parties to this court and the Supreme Court of Ohio, the Supreme Court substituted the Federal Deposit Insurance Company ("FDIC"), in its capacity as receiver of Washington Mutual, as the party plaintiff and real party in interest.  In June 2009, the Supreme Court dismissed appellants' appeal as improvidently granted, and the matter was ultimately remanded to the trial court.

{¶ 5}   On March 17, 2010, FDIC filed a notice of removal to the Southern District of Ohio.  Chase subsequently sought, and was granted, leave to intervene in the federal action.  In March 2011, the claims between FDIC and appellants were resolved pursuant to a settlement and dismissal with prejudice, leaving intervenor Chase and appellants as the only remaining parties.  In February 2012, Chase filed a complaint in foreclosure in the federal action, and appellants then filed a motion to dismiss for lack of subject-matter jurisdiction.  The federal court subsequently granted appellants' motion to dismiss, remanding the matter to the trial court.

{¶ 6}   On April 26, 2013, Chase filed a motion for summary judgment in the trial court, asserting it was the holder of the subject note and mortgage.  Appellants filed a memorandum contra Chase's motion for summary judgment.  On April 18, 2014, the trial court filed a decision and entry denying Chase's motion for summary judgment and dismissing the action.

{¶ 7}   On December 21, 2017, appellants filed a motion for contempt against Chase seeking an order by the trial court holding Chase in contempt for "failing to obey the Court's Order of April 18, 2014, pursuant to R.C. 2705, *et seq.*"  (Appellants' Mot. for Contempt at 1.)   In its memorandum in support, appellants argued that Chase had reported information to the Internal Revenue Service ("IRS") "for the issuance of a Form

1099-C for Tax Year 2014 against Beatley." (Appellants' Mot. for Contempt at 4.) Appellants asserted that issuance of the 1099-C form was in contravention of the trial court's decision and entry of April 18, 2014 (hereafter "the 2014 decision") in which the trial court found that any losses or consequences to be borne as a result of Chase's failure to act as to any claims related to the note and mortgage should be borne by Chase and not appellants.

{¶ 8} On January 8, 2018, Chase filed a memorandum in opposition to the motion for contempt, asserting the underlying dispute came to an end when the trial court entered the 2014 decision dismissing the action and, therefore, the trial court lacked jurisdiction to consider a civil contempt motion. Chase further argued the 2014 decision did not affirmatively direct it to refrain from issuing a 1099-C form. On May 25, 2018, appellants filed a reply to Chase's memorandum contra.

{¶ 9} The matter was referred to a magistrate of the trial court who conducted a hearing on the contempt motion. On May 29, 2018, the magistrate issued a decision denying appellants' motion for contempt. The decision of the magistrate included the following findings of fact:

> On April 18, 2014, this Court issued a Decision and Entry. That Entry terminated the litigation.
>
> At a point in time after the April 18, 2014 Entry, Chase or someone on behalf of Chase prepared an IRS Form 1099-C.
>
> The IRS form 1099-C is used to report a discharge of indebtedness.
>
> Nowhere within the April 18, 2014 Entry is there language that orders Chase to do or refrain from doing any act concerning the 1099-C.

(Mag. Decision at 2.)

{¶ 10} The magistrate's conclusions of law provided in part: "The undersigned reviewed the Court's Entry within the framework of contempt. The undersigned could not locate any language that orders Chase to do or refrain from doing any act directly related to the 1099-C. Hence, * * * Chase cannot be held in contempt – civil or criminal." (Mag. Decision at 3.)

{¶ 11} On June 8, 2018, appellants filed objections to the magistrate's decision. In its objections, appellants argued that, while "Beatley conceded during the hearing [that] the April 18, 2014 Entry did not specifically address a Form 1099-C, Beatley submits that a direct reference is not necessary to find contempt." (Appellants' Objs. at 4.) On June 12, 2018, Chase filed a memorandum in opposition to appellants' objections, asserting in part that the trial court lacked jurisdiction to consider the contempt motion to the extent it seeks a finding of civil contempt. Chase further argued that the 2014 decision was not sufficiently specific to support the requested contempt sanction.

{¶ 12} On August 14, 2019, the trial court issued a decision and entry overruling appellants' objections. In its decision, the trial court held in part that appellants "failed to prove by clear and convincing evidence that Chase failed to abide by the April 18, 2014 court order." (Aug. 14, 2019 Decision at 3.) The trial court additionally determined that the relief sought by appellants was "remedial rather than punitive," making the motion "one for civil contempt." (Aug. 14, 2019 Decision at 3.) The court therefore concluded that the contempt motion was moot because "the underlying case was terminated upon the filing of the April 18, 2014 court order." (Aug. 14, 2019 Decision at 3.)

{¶ 13} On appeal, appellants set forth the following two assignments of error for this court's review:

> [I.] THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS CONCLUSION THAT IT HAD NO JURISDICTION TO HOLD CONTEMPT PROCEEDINGS AFTER THE FILING OF THE COURT'S APRIL 18, 2014, DECISION AND ENTRY WHICH TERMINATED THE ACTION.
>
> [II.] THE TRIAL COURT ERRED BY INCORRECTLY INTERPRETING JUDGE REECE'S APRIL 18, 2014, JUDGMENT, AND ENTERING A FINDING THAT CHASE'S POST-JUDGMENT ISSUANCE OF A 1099-C AGAINST MR. BEATLEY WAS NOT CONTRARY TO THE ADJUDICATION BY JUDGE REECE'S [sic] SET FORTH IN THE APRIL 18, 2014 DISMISSAL ENTRY.

{¶ 14} Appellants' assignments of error are interrelated and will be considered together. In these assignments of error, appellants contend the trial court erred in: (1) determining it had no jurisdiction to hold contempt proceedings following the filing of

the 2014 decision, and by (2) incorrectly interpreting the 2014 decision and failing to find Chase in violation of that order for issuing a 1099-C form.

{¶ 15} Under the first assignment of error, appellants challenge the trial court's jurisdictional determination as to the contempt motion, asserting the trial court had inherent as well as statutory authority to enforce the findings and conclusions of the court in the 2014 decision. In support, appellants rely in part on R.C. 2705.02(A) (providing that a party may be punished for contempt if found guilty of "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer").

{¶ 16} In response to the first assignment of error, Chase argues appellants brought a motion for civil (as opposed to criminal) contempt, for which the trial court had no continuing jurisdiction. According to Chase, because the 2014 decision involved an unconditional dismissal by the trial court which contains no reservation of jurisdiction, the court in the instant proceeding correctly determined it lacked jurisdiction over a civil contempt motion.

{¶ 17} The Supreme Court has recognized that "in general, when a trial court unconditionally dismisses a case or a case has been voluntarily dismissed under Civ.R. 41(A)(1), the trial court patently and unambiguously lacks jurisdiction to proceed." *State ex rel. Hummel v. Sadler*, 96 Ohio St.3d 84, 2002-Ohio-3605, ¶ 22, citing *Page v. Riley*, 85 Ohio St.3d 621, 623 (1999). *See also State ex rel. Rice v. McGrath*, 62 Ohio St.3d 70, 71 (1991) (the trial court, "having unconditionally dismissed the underlying case, patently and unambiguously lacked jurisdiction over it").

{¶ 18} However, despite a dismissal, "a trial court may consider certain collateral issues not related to the merits of the action." *Hummel* at ¶ 23. One such collateral issue is contempt, and "a court may exercise continuing jurisdiction depending upon the nature of the contempt proceeding." *State ex rel. Conkle v. Sadler*, 10th Dist. No. 02AP-438, 2002-Ohio-6104, ¶ 9. In addressing this issue, courts "distinguish between civil and criminal contempt proceedings." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001). In the case of a civil contempt "[w]here the parties have settled the underlying case that gave rise to the civil contempt motion, the contempt proceeding is moot, since the case has come to an end." *Conkle* at ¶ 9, citing *Corn* at 555. A trial court, however,

"may consider the collateral issue of criminal contempt even after the underlying action is no longer pending." *Id.,* citing *Corn* at 556. *See also State ex rel. Benbow v. Runyan*, 99 Ohio St.3d 410, 2003-Ohio-4127, ¶ 7, citing *Corn* at 556; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("even when a trial court has unconditionally dismissed a case, the court retains jurisdiction to consider the collateral issue of criminal contempt").

{¶ 19} In determining if a contempt proceeding is civil or criminal, "the pertinent test is 'what does the court primarily seek to accomplish by imposing sentence?' " *Conkle* at ¶ 10, quoting *Corn* at 555, citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Under Ohio law, "[c]ivil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel compliance with a court order." *Id.* By contrast, criminal contempt sanctions "are punitive in nature and are designed to vindicate the authority of the court." *Id.*, citing *Corn* at 555; *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15 (1988). Accordingly, "civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *Id.*, citing *Corn* at 555.

{¶ 20} As noted under the facts, the trial court in the instant case determined that "[t]he requested relief is remedial rather than punitive, making Beatley's motion one for civil contempt." (Aug. 14, 2019 Decision at 2.) On review, we agree.

{¶ 21} In their memorandum in support of the motion for contempt, appellants asserted that Chase's action in reporting tax information (i.e., filing the Form 1099-C) "cause[d] damages to Beatley" by "attributing Beatley with income for the year 2014." (Appellants' Mot. for Contempt at 4.) Based on that allegation, appellants' motion sought "a Judgment in favor of Beatley and against Chase for the amount of Beatley's tax liability, penalties, and interest to the Internal Revenue Service caused by Chase's failure to comply with the Order plus any related expenses and costs, as well as reasonable attorney fees, caused by Chase's contemptuous conduct, including * * * costs and fees incurred in bringing this Motion." (Appellants' Mot. for Contempt at 5-6.)

{¶ 22} Under Ohio law, if sanctions sought in a contempt proceeding "are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil." *Denovchek* at 16. As set forth above, the contempt

motion alleged damages to appellants and requested monetary compensation (i.e., the amount of Beatley's tax liability, penalties and interest, as well as any related expenses, costs and attorney fees) as a result of Chase's issuance of the tax reporting form. As determined by the trial court, the relief sought under the motion is fairly characterized as remedial, i.e., for the benefit of appellants and, therefore, in the nature of civil contempt, not criminal. Further, the record supports Chase's contention that the 2014 decision of the trial court dismissing the underlying action contained no language reserving jurisdiction. Accordingly, we find no error in the trial court's conclusion that it lacked jurisdiction to consider a subsequent civil contempt motion.

{¶ 23} However, even assuming the alleged contempt could be characterized as criminal in nature (i.e., to vindicate the authority of the court), we find no error by the trial court in its further determination that appellants failed to prove Chase was in violation of the 2014 decision. As noted above, appellants' second assignment of error challenges the trial court's interpretation of the 2014 decision and its failure to find Chase in contempt for violating that decision.

{¶ 24} In asserting before the trial court that Chase was in contempt, appellants relied on the following language from the 2014 decision: "Therefore, the Court finds any losses or consequences to be borne as a result of Chase's failure to act – timely or otherwise – with respect to any claims related to the subject note and mortgage should be borne by Chase and/or the FDIC, not by the Beatley Defendants." (Apr. 18, 2014 Decision at 25.)

{¶ 25} The magistrate, on review of the 2014 decision, found no language "that orders Chase to do or refrain from doing any act directly related to the 1099-C." (Mag. Decision at 3.) The trial court similarly determined the 2014 decision contained no language prohibiting Chase "from filing a 1099 tax document." (Aug. 14, 2019 Decision at 3.) The court therefore concluded: "Beatley has failed to prove by clear and convincing evidence that Chase failed to abide by the April 18, 2014 court order." (Aug. 14, 2019 Decision at 3.)

{¶ 26} A reviewing court "will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion." *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981). In order to be "guilty of contempt for

failure to comply with a court order, there must be an order with which the person charged has failed to comply." *Godward v. Kory*, 5th Dist. No. 2010-CA-00350, 2011-Ohio-5265, ¶ 20, citing *S. Euclid Fraternal Order of Police, Lodge 80 v. D'Amico*, 29 Ohio St.3d 50 (1987). Further, "[i]f the contempt charge is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous and not subject to dual interpretations, and the contemnor must have knowledge of the order." *Id. See also Doles v. Doles*, 4th Dist. No. 1085 (May 9, 1985) ("In determining whether an order has been violated in the context of contempt proceedings, the order will not be expanded by implication beyond the meaning of its terms.").

{¶ 27} A review of the 2014 decision supports the findings of the magistrate and trial court that there is no language expressly prohibiting Chase from issuing a tax information form, and we note appellants acknowledge such fact in their brief. We further note that the language in the 2014 decision regarding any losses or consequences to be borne by Chase and/or FDIC appears to be, in context, directed to the trial court's discussion of the fact there was a purchase and assumption agreement between Chase and FDIC and that appellants were "not parties" to that agreement. (Apr. 18, 2014 Decision at 25.) Again, however, the 2014 decision contains no directive (or even reference) to tax reporting issues.

{¶ 28} In general, "[p]roceedings for contempt for noncompliance will not lie where the order does not expressly address the alleged act of disobedience." *Cortland United Methodist Church v. Knowles*, 11th Dist. No. 2006-T-0110, 2007-Ohio-3383, ¶ 34. Here, given the absence of any specific order prohibiting the complained conduct (and assuming, arguendo, the trial court had jurisdiction to consider the motion), we find no abuse of discretion by the trial court in declining to hold Chase in contempt for an alleged violation of the 2014 decision.

{¶ 29} Based on the foregoing, appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.

_____