[Cite as *Roberts v. Farrell*, 2023-Ohio-1109.]


IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY


SARAH B. ROBERTS FKA FARRELL,

    PLAINTIFF,

    v.

ROBERT C. FARRELL,

    DEFENDANT.

[JOEL M. SPITZER - APPELLANT]

CASE NO. 9-22-46


O P I N I O N


Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2016-DR-208

Judgment Vacated

Date of Decision:  April 3, 2023


APPEARANCES:

    *Edwin M. Bibler* for Appellant

    *William J. Owen* for State of Ohio

**WILLAMOWSKI, J.**

{¶1} Contemnor-appellant Joel M. Spitzer ("Spitzer") appeals the judgment of the Family Division of the Marion County Court of Common Pleas, alleging that the trial court erred in finding him in contempt. For the reasons set forth below, the judgment of the trial court is vacated.

*Facts and Procedural History*

{¶2} Spitzer was the attorney representing Sarah Roberts ("Roberts") in a domestic relations case. Doc. 21. On May 10, 2022, the trial court issued an entry that ordered the parties to appear for a final pretrial hearing at 9:00 A.M. on July 28, 2022. Doc. 125. Spitzer and opposing counsel had finalized the details of an agreed judgment entry in the days leading up to the final pretrial hearing. Tr. 12. On the morning of July 28, 2022, Spitzer was travelling to the final pretrial hearing when his teenage daughter called him "in a panic," telling him that his eight-year-old son was suffering from an injury to his hand. Tr. 14-15. Spitzer heard his son yelling on the phone and got 9-1-1 on the line. Tr. 22.

{¶3} Spitzer then contacted a staff member, Ashton Thompson ("Thompson"), and informed him that he was not going to be able to appear at the hearing because his son was experiencing a medical emergency. Tr. 14, 22. He directed Thompson to personally notify the court that he (Spitzer) would not be able to attend the hearing due to a medical emergency. Tr. 14, 22. He also directed Thompson to bring a copy of a proposed agreed judgment entry to the trial court.

-2-

Tr. 14.  Spitzer also reached out to opposing counsel and his client to apprise them of the situation and to inform them that he was unable to be at the hearing.  Tr. 8, 22.

{¶4} Thompson personally informed the court of Spitzer's situation and also brought a copy of the agreed judgment entry.  Tr. 8, 9, 14.  At the final pretrial hearing, the agreed judgment entry was presented to the trial court.  Tr. 9-10.  However, while the other parties were ready to sign this document, the agreed judgment entry was not fully executed because of Spitzer's absence.  Tr. 11.  *See* Doc. 149.  At some point, Spitzer sent an email to the trial court that contained documentation from Nationwide Children's Hospital that stated he had, in fact, sought medical treatment for his son that day.  Tr. 15.

{¶5} On July 28, 2022, the trial court issued an order that directed Spitzer to appear on August 4, 2022 "to show cause why he should not be held in contempt of court" for failing to attend the final pretrial hearing.  Doc. 145.  On August 3, 2022, Spitzer filed a response to the show cause order that included a copy of the document from Nationwide Children's Hospital that established he had sought medical treatment for his son on the date of the final pretrial hearing.  Doc. 149, Ex. A.  On August 3, 2020, the trial court approved the agreed judgment entry in the underlying domestic relations case.  Doc. 147.

{¶6} At the show cause hearing on August 4, 2022, opposing counsel indicated that Spitzer had "reached out" to him and Roberts to inform them of the situation. Tr. 8. He also stated that Spitzer "ha[d] a member of his office show up to the Court to apprise the Court of the emergency situation * * *." Tr. 8. Opposing counsel noted that the parties were able to present the agreed judgment entry to the court but "were just unable to execute the document" on July 28, 2022 due to Spitzer's absence. Tr. 9, 11. He then stated that he "d[i]dn't believe that Mr. Spitzer's absence unduly prolonged the proceedings to any extent." Tr. 9. Opposing counsel concluded by saying "we don't believe sanctions are appropriate * * * and we fully understand why Mr. Spitzer was unable to be here given the fact that his child had a medical emergency." Tr. 9.

{¶7} Spitzer's counsel then argued that this was an indirect criminal contempt proceeding and requested an independent judge to preside over this matter. Tr. 13. In response, the trial judge characterized this proceeding as "an indirect civil contempt * * *" and denied the request for an independent judge. Tr. 13. Spitzer's counsel then explained the nature of the medical emergency that prevented Spitzer from appearing; stated that the trial court was notified by a staff member that Spitzer was going to be unable to appear; and noted that Spitzer's absence did not significantly delay the resolution of this case. Tr. 14.

{¶8} Spitzer then noted that he had never before missed a hearing at the trial court; that he had to tend to his son's medical emergency; and that he had notified

the court prior to the hearing that he was not able to be present. Tr. 19, 22. The trial judge then found Spitzer to be in contempt. Tr. 23. On August 10, 2022, the trial court issued a judgment entry that stated the following:

> **Mr. Spitzer failed to notify the Court he would be unable to attend the Final Pre-trial due to a family emergency until 9:51 a.m. when he e-mailed the Court of his inability to attend. Mr. Spitzer also failed to provide the Court with an Agreed Judgment Entry approved by the parties and counsel at the Final Pre-trial which his counsel states in his response was done. Mr. Spitzer had opportunity to notify the Court of his inability to attend the Final Pre-trial, placing his client at a disadvantage in attempting to resolve any parenting issues which remained, and in disregard to the prior Orders of this Court.**
>
> **\* \* \***
>
> **This Court directs Joel M. Spitzer to pay the court costs associated with the Order to Show Cause issued by this Court on July 28, 2022. Joel M. Spitzer shall be fined Two hundred fifty dollars ($250.00) for this Contempt Finding and said fine is suspended on the condition that he fully complies with the Marion County Family Court Local Rules of Practice and attends all scheduled conferences, pre-trials, and hearings from the date of this order through December 30, 2022.**

Doc. 150. On August 23, 2022, Spitzer filed a motion requesting the trial court to correct its August 10, 2022 judgment entry. Doc. 152. Spitzer noted that, prior to the hearing on July 28, 2022, Thompson had personally notified the trial court that he (Spitzer) was unable to appear. Doc. 152.

{¶9} Attached to this motion was an affidavit in which Roberts affirmed the following: "While I was at the courthouse on July 28, 2022, Ashton Thompson was present at or about 8:46 am. I heard Ashton Thompson tell the court of my counsel's

emergency." Doc. 152, Ex. A. Roberts further averred that she was not put "at a disadvantage" by her counsel and that, on that morning, "Ashton Thompson had a prepared agreed judgment entry that [she] * * * was prepared to sign." Doc. 152, Ex. A. The trial court did not issue a ruling on the motion requesting the trial court to correct its August 10, 2022 judgment entry.

{¶10} Spitzer then filed his notice of appeal on September 8, 2022. Doc. 154. On appeal, he raises the following two assignments of error:

**First Assignment of Error**

**The lower court's action finding Mr. Spitzer in contempt of court was an abuse of discretion, and as such should be reversed. There was no showing of intent to defy the Court.**

**Second Assignment of Error**

**The trial court abused its discretion in failing to afford due process rights requiring a presumption of innocence, and the right to an impartial and unbiased judge.**

*First Assignment of Error*

{¶11} Spitzer argues that, contrary to the trial judge's characterization of this action as an indirect civil contempt, this proceeding was, in fact, an indirect criminal contempt. Spitzer then argues that he did not have the required intent to defy the trial court that is required to find a person in indirect criminal contempt.

Legal Standard

{¶12} "In its broad sense, a contempt is a disregard of, or disobedience to, the orders or commands of a public authority, legislative or judicial, or an

interruption of its proceedings by disorderly behavior or insolent language, in its presence * * *." *Scherer v. Sherer*, 72 Ohio App.3d 211, 213, 594 N.E.2d 150, 151 (3d Dist. 1991), quoting 17 Ohio Jurisprudence 3d, Contempt, Section 1, at 315-316 (1980).

> **'It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.' *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. 'The law surrounding contempt was created to uphold and ensure the effective administration of justice, secure the dignity of the court, and affirm the supremacy of law.' *Whitman v. Whitman*, 3d Dist. Hancock No. 5-11-20, 2012-Ohio-405, ¶ 39.**

*McAdoo v. McAdoo*, 3d Dist. Allen No. 1-22-01, 2022-Ohio-1550, ¶ 8. "A common pleas court has both inherent and statutory power to punish contempts * * *." *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 96 (2d Dist.), quoting *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693, 694 (1992). *See* R.C. 2705.02. *See also State ex rel. Johnson v. County Court of Perry County*, 25 Ohio St.3d 53, 54, 495 N.E.2d 16, 18 (1986).

> **Proceedings in contempt are sui generis in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these. Contempt proceedings are means through which the courts enforce their lawful orders.**

*Lindsey v. Lindsey*, 2021-Ohio-2060, 174 N.E.3d 458, ¶ 13 (11th Dist.), quoting *City of Cincinnati v. Cincinnati Dist. Council 51, Am. Federation of State, County*

*and Municipal Emp., AFL-CIO*, 35 Ohio St.2d 197, 202-203, 299 N.E.2d 686, 691 (1973).

{¶13} Contempts "can be classified as either direct or indirect" and then further "classified as civil or criminal." *Scarnecchia v. Rebhan*, 7th Dist. Mahoning No. 05 MA 213, 2006-Ohio-7053, ¶ 34. Accordingly,

> **[a] finding of contempt must be reviewed on two different levels. * * * First, the contemptuous conduct must be examined to see whether it constituted a direct or indirect contempt. Second, the trial court's treatment of the matter must be analyzed in order to ascertain whether the contemnor was dealt with under the court's civil or criminal contempt powers.**

(Citations omitted.) *In re Cox*, 11th Dist. Geauga Nos. 98-G-2183, 98-G-2184, 1999 WL 1312688, *3. "The importance of classifying the types of contempt is the effect the classification has on the rights of the contemnor." *In re Purola*, 73 Ohio App.3d 306, 311, 596 N.E.2d 1140, 1144 (3d Dist. 1991).

{¶14} "Contempt may be characterized as either direct or indirect." *Bank One Trust Co., N.A. v. Scherer*, 176 Ohio App.3d 694, 2008-Ohio-2952, 893 N.E.2d 542, ¶ 18. "The fundamental distinction between direct contempt and indirect contempt lies in the location of the act of contempt * * *." *Cleveland v. Bright*, 2020-Ohio-5180, 162 N.E.3d 153, ¶ 26 (8th Dist.).

> **Direct contempt occurs in the presence of the court in its judicial function. R.C. 2705.01. Indirect contempt involves behavior that occurs outside the presence of the court and demonstrates a lack of respect for the court or its lawful orders.**

*Fidler v. Fidler*, 10th Dist. Franklin No. 08AP-284, 2008-Ohio-4688, ¶ 11, citing

*State v. Drake*, 73 Ohio App.3d 640, 643, 598 N.E.2d 115 (8th Dist. 1991).

> **Because direct contempt of court occurs in a way closely related to the court itself, a finding of direct contempt may occur summarily. Due process does not require the court to provide the contemnor with a hearing. *In re Lands*, * * * 146 Ohio St. [589,] 595, 33 O.O. [80,] 82, 67 N.E.2d [433,] 437 [(1946)].**

*In re Purola* at 311-312. "In contrast, indirect contempt of court does not occur in

the presence of the court and a hearing is required to provide the contemnor with

the opportunity to explain his actions." *Id.* at 312. *See Basore v. Basore*, 5th Dist.

Ashland No. 01-COA-01410, 2001-Ohio-7054, 2001 WL 1673692, *1 (Dec. 20,

2001) (holding that "arriving late to a hearing or not appearing at all" would fall

within the category of indirect contempt).

{¶15} "Contempts of court are also classed as being either civil or criminal."

*Scherer* at 214. "Because all contempt involves some type of sanction or

punishment, the distinction between civil and criminal contempt is usually based on

the purpose served by imposing the sanction." *Lindsey, supra*, at ¶ 13. *See also*

*Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980)

"[T]here has never been a clear line of demarcation between criminal and civil

contempts * * *." *Bright* at ¶ 21, quoting *State v. Local Union 5760, United*

*Steelworkers of America*, 172 Ohio St. 75, 82, 173 N.E.2d 331, 338 (1961).

{¶16} "[I]n determining whether a contempt is civil or criminal, the pertinent

test is 'what does the court primarily seek to accomplish by imposing sentence?'"

*State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554-555, 2001-Ohio-15, 740 N.E.2d 265, 269 (2001), quoting *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966). Was "the purpose behind the sanction * * * to coerce [the contemnor] * * * to obey the court's judgment, or was it to punish [the contemnor] * * * for past violations?" *Lindsey, supra*, at ¶ 14. "Reviewing courts must look to the entire record to determine the purpose of the sanction." *Bright, supra*, at ¶ 22.

{¶17} As a general matter, "[i]f the sanction is * * * for the benefit of the complainant rather than the court, the contempt proceeding is usually classified as civil." *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12. "Civil contempts are violations against the party for whose benefit the order was made, whereas criminal contempts are offenses against the dignity or process of the court." *Scarnecchia, supra*, at ¶ 34. *See Corn, supra*, at 555. The sanction "in criminal contempt cannot undo or remedy the thing which has been done * * *"; however, the sanction "in civil contempt * * * remedies the disobedience." *Estate of Harrold v. Collier*, 9th Dist. Wayne Nos. 07CA0074, 08CA0024, 2009-Ohio-2782, ¶ 13, quoting *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 841, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (Scalia, J., concurring), quoting *In re Fox*, 96 F.2d 23, 25 (3d Cir. 1938). Further,

> '[c]ivil * * * contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.' ***Pugh v. Pugh***, 15 Ohio

> **St.3d 136, 140, 472 N.E.2d 1085 (1984), quoting *McComb v.
> Jacksonville Paper Co*., 336 U.S. 187, [191,] 69 S.Ct. 497, 93 L.Ed.
> 599 (1949). Criminal contempt sanctions are not coercive in
> nature, but act as 'punishment for the completed act of
> disobedience, and to vindicate the authority of the law and the
> court.' *Brown* at 254, 416 N.E.2d 610.**

*Heinrichs v. 356 Registry, Inc*., 2016-Ohio-4646, 70 N.E.3d 91, ¶ 54 (10th Dist.).

*See Delawder v. Dodson*, 4th Dist. Lawrence No. 02CA27, 2003-Ohio-2092, ¶ 14

(holding that "contempt for failure to appear is indirect criminal contempt").

{¶18} While "[t]he sanction imposed by the trial court should not be

dispositive of this issue of the court's purpose, * * * it is some evidence of what was

sought to be accomplished." *State v. Kilbane*, 61 Ohio St.2d 201, 206, 400 N.E.2d

386, 390 (1980). "Because criminal contempt serves a punitive purpose, 'there is

no requirement that the person charged be permitted to purge himself or herself of

the contempt.'" *In re E.A*., 3d Dist. Crawford No. 3-21-21, 2022-Ohio-2625, ¶ 15,

quoting *City of Cleveland v. Robinson*, 8th Dist. Cuyahoga No. 109273, 2020-Ohio-

1030, ¶ 12. "Generally, a criminal contempt sanction consists of an unconditional

punishment; however, not every conditional sanction is civil." *State v. Adams*,

2014-Ohio-2728, 14 N.E.3d 1071, ¶ 14 (1st Dist.). The determinate sanction

imposed for a criminal contempt may have "conditions * * * attached * * * which

allow for earlier termination of the sentence." *Kilbane* at 207.

{¶19} "Any sanction for civil contempt must allow the party who is in

contempt an opportunity to purge the contempt." *Frey v. Frey*, 197 Ohio App.3d

273, 2011-Ohio-6012, 967 N.E.3d 273, ¶ 31 (3d Dist.). "Once the contemnor complies with the court's order, the purpose of the contempt sanction has been achieved and the sanction is discontinued." *In re E.A.* at ¶ 14, quoting *In re Purola, supra,* at 312. For this reason, in civil contempt proceedings, "[t]he contemnor is said to carry the keys of his prison in his pocket, * * * since he will be freed if he agrees to do as ordered." *Brown, supra*, at 253-254.

**{¶20}** However, "[o]rders that purport to regulate future conduct do not provide the party with a true opportunity to purge." *Ryder v. Ryder*, 5th Dist. Stark No. 2001CA00190, 2002-Ohio-765, 2002 WL 258218, *2 (Feb. 19, 2002). Similarly, "[a]n order suspending punishment on the condition the * * * [contemnor] comply in the future with the court order does not allow for purging." *Solove v. Solove*, 5th Dist. Delaware No. 2011-CAF-08-0070, 2012-Ohio-1335, ¶ 12. *See also In re C.L.W.*, 12th Dist. Clermont No. CA2021-05-013, 2022-Ohio-1273, ¶ 58, quoting *Tucker v. Tucker*, 10 Ohio App.3d 251, 252, 461 N.E.2d 1337, 1339 (10th Dist.).

> **Where the court either does not make it clear that it is giving a party the opportunity to purge contempt or regulates a party's future conduct, the court has failed to comply with the purge requirement for civil contempt * * *.**

*Rich v. Rich*, 11th Dist. Trumbull No. 2012-T-0089, 2013-Ohio-2840, ¶ 18. *See also In re E.A., supra*, at ¶ 14-15.

**{¶21}** "Criminal and civil contempt serve different ends within the judicial system, and are governed by different rules." *Ryder, supra*, *2. "The most important consequences arising from this classification of contempts is that many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings." *Kilbane*, *supra*, at 205. Civil contempt must be established by clear and convincing evidence while criminal contempt must be established beyond a reasonable doubt. *Bright, supra*, at ¶ 24; *Brown, supra*, at 252.

**{¶22}** Further, "in cases of criminal, indirect contempt, it must be shown that the alleged contemnor intended to defy the court." *Heinrichs, supra*, at ¶ 55, quoting *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 573 N.E.2d 98 (1991), at paragraph two of the syllabus. "[I]ntent to defy the court is an essential element of indirect criminal contempt." *Maynard v. Elliott*, 9th Dist. Lorain No. 02CA008067, 2002-Ohio-5260, ¶ 8. However, "in cases of 'civil contempt'" it is "irrelevant that the transgressing party does not intend to violate the court order." *Heinrichs* at ¶ 55, quoting *Pedone v. Pedone*, 11 Ohio App.3d 164, 165, 463 N.E.2d 656, 658 (8th Dist. 1983).

Legal Analysis

**{¶23}** At the show cause hearing, the trial court characterized this proceeding as an indirect civil contempt. On appeal, Spitzer argues that this proceeding was, in fact, an indirect criminal contempt. Spitzer then argues that he did not have the

requisite intent to defy the trial court that is necessary to be held in criminal contempt and that the trial court, therefore, abused its discretion in finding him in contempt in this case. For several reasons, we conclude that this was a criminal contempt.

{¶24} First, this contempt action was not "for the benefit of the complainant rather than the court * * *." *Liming, supra*, at ¶ 12. *See also Brown, supra*, at 253. In this case, opposing counsel flatly argued against the imposition of a sanction at the show cause hearing, saying: "[w]e don't believe any sanctions are appropriate at this time." Tr. 8. *See State ex rel. Johnson, supra*, at 55. Further, the record contains no indication that any other person or party involved in this action served as a complainant or otherwise sought a contempt sanction to address Spitzer's decision to tend to his son's medical emergency. The trial judge gave the following reason for the contempt proceeding:

> **Mr. Spitzer was not present and the Court found it appropriate at that time to issue an Order to Appear and Show Cause to why he should not be found in contempt of the Court's prior Order requiring his in person appearance of both parties and counsel for the final pretrial.**

Tr. 8. Thus, the trial judge took the initiative in commencing a contempt proceeding for the apparent reason of vindicating the authority of the trial court. This bears the markings of criminal contempt as these proceedings "are uniquely a matter between the court and the person alleged to have disobeyed the court's order." *Natl. Equity*

*Title Agency, Inc. v. Rivera*, 147 Ohio App.3d 246, 2001-Ohio-7095, 770 N.E.2d 76, ¶ 27 (1st Dist.).

**{¶25}** Second, the purpose of this contempt proceeding was not to remedy a "violation[] against the party for whose benefit the order was made" but was to punish a perceived "offense[] against the dignity or process of the court" that could not be undone. *Corn, supra*, at 555. *Estate of Harrold, supra*, at ¶ 13, quoting *Bagwell, supra*, at 841. Opposing counsel stated the following rationale for his opposition to the imposition of a contempt sanction in this situation:

> **We had entered into an Agreed Entry at that point or had planned to. There were a few minor details that we were trying to iron out and, in fact, his client in the presence of—of counsel, I believe, signed that document that day then proceeded to \* \* \* enter into that agreement and submit it to the Court which the Court did approve. I don't believe that Mr. Spitzer's absence unduly prolonged the proceedings to any extent. I do believe that he tried to apprise the Court of his inability to appear and as far as our position would go, we—we don't believe sanctions are appropriate at this point in time and we fully understand why Mr. Spitzer was unable to be here given the fact that his child had a medical emergency.**

Tr. 8-9. The evidence in the record contains no indication that Spitzer's absence materially disadvantaged or violated the interests of any person or party involved in this case. Tr. 8-9, 14. The record also contains no indication that any person or party involved in this action suffered any losses as the result of the conduct that the trial judge found to be contemptuous.

**{¶26}** Rather, the trial court's judgment entry indicates that this contempt proceeding was about Spitzer "properly represent[ing] his client *in this Court* and demonstrat[ing] his *respect for this Court* to which it is entitled." (Emphasis added.) Doc. 151. This language suggests that the violation that the trial judge perceived in this case was committed against the dignity of the court and the legal process. As a consequence, the sanction does not contain any measures to compensate for any losses or damages that were sustained by a person or party to this action. The effects of such a perceived harm cannot be undone by a remedial or compensatory sanction.

**{¶27}** Third, the purpose of the contempt sanction was not to coerce or enforce compliance with a court order but was to serve as a "punishment" for a "completed act of disobedience." *Heinrichs, supra*, at ¶ 54, quoting *Brown* at 254. In this case, Spitzer was ordered to show cause for his failure to appear at a hearing in compliance with a previously issued scheduling order. Doc. 145. As the date of the scheduled hearing had already passed, obedience to this scheduling order could not possibly have been coerced by the imposition of a contempt sanction. Thus, in this case, the trial judge imposed a contempt sanction to address the completed act of failing to comply with an order that could no longer be followed by the time of the show cause hearing or afterwards.

**{¶28}** The trial court indicated that the contempt sanction was imposed to establish "a corrected pattern of behavior by [Spitzer]" and establish "a future pattern of behavior compliant with the rules of the Court * * *." Tr. 19. This

-16-

sanction does not appear to have been imposed to serve any kind of coercive or remedial purpose that would be associated with civil contempt. With this sanction, Spitzer "was not coerced into abiding by the terms of the previous orders, but was being punished for having failed to do so in the first place." *In re Guardianship of Finan*, 2014-Ohio-3572, 18 N.E.3d 459, ¶ 16 (5th Dist.). *See also Darr v. Livingston*, 2017-Ohio-841, 85 N.E.3d 1260, ¶ 14 (10th Dist.).

**{¶29}** At the show cause hearing, the trial judge did characterize this proceeding as an indirect civil contempt. Tr. 13. He stated that "this is not a criminal contempt. It's an indirect civil contempt and I have no intention nor did I ever have any intention of jailing Mr. Spitzer." Tr. 13. Thus, the trial judge appears to have classified this action as an indirect civil contempt based on the fact that he was not considering a jail sentence as a sanction. However, a criminal contempt can be punished by a "prison sentence *or* fine." (Emphasis added.) *Denovchek v. Board of Trumbull County Com'rs*, 36 Ohio St.3d 14, 520 N.E.2d 1362, 1364 (1988). *See also In re Purola, supra*, at 311. Thus, in classifying this contempt, the trial judge appears to have primarily relied upon the type of sanction that was imposed rather than primarily relying upon the reason that the sanction was imposed.

**{¶30}** The law is clear that we are to "distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment." *Brown*, supra, at 253. *See also Liming, supra*, at ¶ 12. "[T]he

-17-

pertinent test is 'what does the court primarily seek to accomplish by imposing [the] sentence?'" *Corn*, *supra*, at 554-555, quoting *Shillitani*, *supra,* at 370.  At the show cause hearing, the trial court gave the following explanation:

> **It's not my intention to jail you or otherwise punish you for your lack of * * * respect for this Court.** *But* **I think you need to get the message that your appearance on time in this Court are your responsibilities to your clients and this Court is imperative.  So what I'm going to do is I'm going to find you in contempt * * *.**

(Emphasis added.)  Tr. 18-19.  In the first statement in this quotation, the trial judge initially disclaimed an intention to punish Spitzer in this case.  Tr. 18.  However, the trial judge then qualified this disclamation with the second statement that follows the adversative conjunction "but."  Tr. 18.  This second statement does not convey a remedial or coercive purpose for finding Spitzer in contempt.  Tr. 19.  Rather, the trial court acted so that Spitzer would "get [a] * * * message * * *."  Tr. 19.

{¶31} In *Scarnecchia v. Rebhan*, the Seventh District Court of Appeals considered whether a contempt proceeding was criminal or civil in nature. *Scarnecchia, supra*, at ¶ 35.  One reason that the contempt proceeding was found to be criminal was the fact that the trial court imposed sanctions "because it felt that [the contemnor's] * * * actions were 'that type of deliberate thumbing of the nose of a court order' and it wanted to send a message." *Id*. at ¶ 35.  In the case presently before this Court, the trial judge imposed contempt sanctions for the same reason: so that Spitzer would "get the message" that his timely appearance at court proceedings were part of his "responsibilities" to his clients and the court.  Tr. 19.

Thus, this contempt sanction was about vindicating the authority of the court by punishing Spitzer for the completed act of failing to appear at the final pretrial hearing.

**{¶32}** Finally, the sanction imposed by the trial court did not offer a true opportunity to purge the contempt but regulated future conduct. *Frey, supra*, at ¶ 31; *Solove*, *supra*, at ¶ 12. In this case, the trial judge imposed the following sanction after finding Spitzer to be in contempt:

> **This Court directs Joel M. Spitzer to pay the court costs associated with the Order to Show Cause issued by this Court on July 28, 2022. Joel M. Spitzer shall be fined Two hundred fifty dollars ($250.00) for this Contempt Finding and said fine is suspended on the condition that he fully complies with the Marion County Family Court Local Rules of Practice and attends all scheduled conferences, pre-trials, and hearings from the date of this Order through December 30, 2022.**

Doc. 151. *See also* Tr. 19. This sanction requires Spitzer to comply with the local rules of court and future court orders directing him to appear until December 30, 2022. Further, the fine is only suspended on the condition of Spitzer's future compliance with the local rules of court until December 30, 2022. *See Adams, supra*, at ¶ 10, 15.

**{¶33}** Under existing caselaw, this contempt sanction does not afford Spitzer a true opportunity to purge. *Lyons v. Lyons*, 3d Dist. Crawford No. 3-85-22, 1987 WL 8156, *4 (Mar. 19, 1987) (A sanction that suspended a jail sentence on condition that contemnor "not violate orders of court in the future * * * did not

properly allow for purging."); *Ryder, supra*, at *2 (A contempt sanction suspended on the condition that contemnor "comply with all court orders in the future" did not offer "a true opportunity to purge."); *Sloat v. James*, 5th Dist. Stark No. 2008 CA 00048, 2009-Ohio-2849, ¶ 29, 32; *Estate of Harrold, supra*, at ¶ 13-14; *Rich, supra*, at ¶ 18, 20 (No valid opportunity to purge existed where a contempt sanction required contemnor "to follow future court orders."). Thus, the sanction imposed in this case is consistent with the criminal nature of this contempt proceeding.

**{¶34}** While the line between civil and criminal contempt can be unclear at times, this action falls squarely on the criminal side of contempt proceedings. *See Brightman, supra*, at ¶ 21. For this reason, Spitzer had to have acted with the intent to defy the trial court to have been properly found in contempt in this case. On appeal, Spitzer next argues that he did not act with the requisite intent to defy the trial court and that, for this reason, the trial judge erred in finding him in contempt. We turn now to examining this argument.

**{¶35}** "An appellate court, when reviewing a trial court's finding of indirect criminal contempt, must determine whether sufficient evidence existed for the trial court to reasonably conclude beyond a reasonable doubt that the contemnor purposely, willfully, or intentionally violated a prior court order." *Matter of D.S.S.*, 2020-Ohio-5387, 163 N.E.3d 59, ¶ 19 (11th Dist.), quoting *In re West*, 5th Dist. Knox No. 14CA22, 2015-Ohio-1501, ¶ 19. Additionally, the required "[i]ntent can be evidenced by reckless or indifferent disregard to a court order which requires a

person to appear in court at an appointed hour." *In re Sprankle*, 7th Dist. Carroll No. 678, 1999 WL 783980, *2 (Sept. 29, 1999). *See also State v. Mobley*, 2d Dist. Montgomery No. 19176, 2002-Ohio-5535, ¶ 15-21.

{¶36} "The court must consider the totality of the circumstances and ascertain whether the contemnor had the intent to obstruct the administration of justice or disobey an order of the court." *State v. Nelson*, 9th Dist. Lorain No. 03CA008242, 2003-Ohio-3922, ¶ 7. In deciding whether a person intended to defy the court in failing to appear at a hearing, courts have examined whether the person acted "without good cause or legal basis * * *." *In re Karasek*, 119 Ohio App.3d 615, 627, 695 N.E.2d 1209, 1216 (2d Dist. 1997). *See Stuber v. Stuber*, 3d Dist. Allen No. 1-02-65, 2003-Ohio-1795, ¶ 10; *Bank One Trust Company, N.A. v. Scherer*, 10th Dist. Franklin No. 08AP-288, 2008-Ohio-6910, ¶ 10. *See also Matter of Bowers*, 3d Dist. Allen No. 1-79-13, 1979 WL 207826, *5 (Nov. 5, 1979).

{¶37} As an initial matter, we note that the trial court made the following statement at the show cause hearing:

> **[T]his is not a criminal contempt. It's an indirect civil contempt and I have no intention nor did I ever have any intention of jailing Mr. Spitzer.**
>
> ***Now if Mr. Spitzer would directly defy*** **an Order of this Court then that might change the circumstances and the characterization of the contempt.**

(Emphasis added.) Tr. 13. Thus, the trial judge's own statements suggest that he did not believe that Spitzer had the intent to defy an order of the trial court that was required to hold a person in criminal contempt.

{¶38} But beyond this suggestion, the trial judge also tacitly acknowledged that a family emergency provided Spitzer with good cause to miss the final pretrial hearing but then offered reasons in addition to his mere absence as the basis for holding him in contempt, saying:

> ***I certainly understand family emergencies. And that i[s] not the problem.* Had I been notified ahead of time, had I been presented with an Agreed Judgment Entry that morning, I would not have been concerned or taken the action that I took in this situation.**

(Emphasis added.) Tr. 18. This rationale for finding Spitzer in contempt was reiterated in the judgment entry:

> **Mr. Spitzer failed to notify the Court he would be unable to attend the Final Pre-trial due to a family emergency until 9:51 a.m. when he emailed the Court of his inability to attend. Mr. Spitzer also failed to provide the Court with an Agreed Judgment Entry approved by the parties and counsel at the Final Pre-trial which his counsel states in his response was done. Mr. Spitzer had opportunity to notify the Court of his inability to attend the Final Pre-trial, placing his client at a disadvantage in attempting to resolve any parenting issues which remained, and in disregard to the prior Orders of this Court.**

Doc. 151. *In re Guardianship of Finan*, *supra*, at ¶ 17 ("Simply failing to appear at a hearing alone does not prove intent to commit contemptuous conduct.").

{¶39} Based on his statements at the show cause hearing and in the judgment entry, the trial judge gave two reasons for the contempt finding beyond Spitzer's

-22-

mere absence at the final pretrial hearing. First, the trial court found that Spitzer "failed to notify the Court he would be unable to attend the Final Pre-trial due to a family emergency until 9:51 a.m. when he emailed the Court * * *." Doc. 151. Second, the trial court found that "Spitzer also failed to provide the Court with an Agreed Judgment Entry approved by the parties and counsel at the Final Pre-trial." Doc. 151. *See also* Tr. 18.

{¶40} However, the first reason given by the trial court is not supported by the evidence in the record. The information presented at the show cause hearing does not suggest that Spitzer failed to make any effort to notify the trial court of his situation until he sent an email at 9:51 A.M.[1] The evidence in the record establishes that Spitzer took a number of steps to notify the trial court, opposing counsel, and Roberts of his situation on the morning of July 28, 2022. At the show cause hearing, opposing counsel stated the following:

> **Mr. Spitzer not only reached out to myself, he reached out to his client and he did have a member of his office show up to the Court to apprise the Court of the emergency situation as it relates to his minor son who was undergoing some kind of surgery on his hand.**

[1] The transcript of the show cause hearing confirms that Spitzer sent an email to the trial court that contained documentation from the hospital that established he sought medical treatment for his son. Tr. 15. *See* Doc. 149, Ex. A. However, the finding that Spitzer sent this email at 9:51 A.M. on July 28, 2022 is not supported by any evidence in the record. No mention of the specific time that this email was sent was made at the show cause hearing or in the materials that were filed in advance of this hearing. The judgment entry contains the first reference to the time of 9:51 A.M. in the record. Doc. 151. In response to this finding, Spitzer filed a motion requesting a correction to the judgment entry with an affidavit in which Roberts averred that "Ashton Thompson was present at or about 8:46 a.m." and that she "heard Ashton Thompson tell the court of my counsel's emergency." Doc. 152, Ex. 1.

Tr. 9. Spitzer's counsel reiterated the fact that Spitzer "immediately sent staff" to notify the trial court about his situation. Tr. 14. Subsequently, the following exchange occurred between the trial court and Spitzer:

> **[Trial Judge:] Well what prevented you from notifying the Court before the hearing—the 9:00 hearing?**
>
> **[Spitzer:] Your Honor, I did. I was on my—my daughter was on hysterics. My son is also calling on his phone, yelling. I sent Ashtyn here immediately. I text—because I couldn't let me daughter off of the phone. I had 9-1-1 on the phone. And I sent Ashtyn here immediately because I could text him. And so I immediately apprised—it was an emergent situation. There is no time other than the simultaneously as things happen. I was on my way on 23 and—just to get off—just about to get off at the exit, I had to zip around, do a U-turn and Ashtyn came immediately to the Court. I immediately text Mr. VanBibber [opposing counsel]. So I don't know in an emergent situation, again I—I-feel that contempt is—is unwarranted. I mean, it—I did everything within my power to respect the Court. And again, I've never missed a hearing in this Court. I've always respected this Court \* \* \*.**

Tr. 21-22. These facts indicate that Spitzer took steps to notify the court of his situation before he later sent an email to the trial court. Tr. 15. The discussion at the show cause hearing indicates that this email was sent to provide the trial court with documentation that he received at the hospital that verified he had sought medical treatment for his son. Tr. 15. This email was not the first effort that Spitzer made to notify the trial court of his son's medical emergency. From our review of the record, the finding that Spitzer "failed to notify the Court he would be unable to attend the Final Pre-trial due to a family emergency *until* 9:51 a.m. when he emailed the Court" is erroneous. (Emphasis added.) Doc. 151.

-24-

**{¶41}** Further, upon receiving word of his son's medical emergency, Spitzer texted opposing counsel; "reached out" to Roberts; immediately directed a staff member to personally notify the trial court of the situation; and had a copy of the agreed judgment entry brought to the final pretrial hearing. Tr. 8, 14, 22. These are not the actions of a person who intended to "impugn the dignity" of the court or to commit "a willful violation of the trial court's order * * *" in response to a family medical emergency that interfered with a court appearance. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 94129, 2010-Ohio-6166, ¶ 13; *Shipman v. Shipman*, 3d Dist. Paulding No. 11-14-10, 2015-Ohio-4419, ¶ 41. *See also In re Contempt of Mgbaraho*, 8th Dist. Cuyahoga No. 80387, 2002-Ohio-3429, ¶ 23 (holding that "a telephone call placed to the authority requiring one's presence is evidence of an intent to comply with an order"); *In re Contempt of Leary*, 8th Dist. Cuyahoga No. 96424, 2011-Ohio-6626, ¶ 24 (An attorney's failed efforts to have another attorney "cover for him" at a hearing were evidence of his "attempts to comply with the trial date and time.").

**{¶42}** Given the circumstances of this case, Spitzer took appropriate steps to notify the trial court of his situation and to mitigate the issues associated with his absence. Thus, having examined the totality of the circumstances, we conclude that the first reason that the trial judge gave for his finding of contempt is not supported by the facts in the record and is not sufficient to establish beyond a reasonable doubt that Spitzer acted with the requisite intent to defy the court. *Maynard*, *supra*, at ¶

2, 9. We turn now to examining whether the other reason offered by the trial court can support a finding of contempt.

**{¶43}** In this case, the second reason given by the trial court in support of its contempt finding—that Spitzer "failed to provide the Court with an Agreed Judgment Entry *approved by the parties and counsel*"—does not identify an act that was committed in violation of a court order. (Emphasis added.) Doc. 151. "In order to be 'guilty of contempt for failure to comply with a court order, there must be an order with which the person charged has failed to comply.'" *Washington Mutual Bank v. Beatley*, 2020-Ohio-4658, 159 N.E.3d 886, ¶ 26 (10th Dist.), quoting *Godward v. Kory*, 5th Dist. Stark No. 2010-CA-00350, 2011-Ohio-5265, ¶ 20. "In general, '[p]roceedings for contempt for noncompliance will not lie where the order does not expressly address the alleged act of disobedience.'" *Washington Mutual Bank* at ¶ 28, quoting *Cortland United Methodist Church v. Knowles*, 11th Dist. Trumbull No. 2006-T-0110, 2007-Ohio-3383, ¶ 34. Further,

> **'[i]f the contempt charge is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous and not subject to dual interpretations, and the contemnor must have knowledge of the order.'**

*City of Marysville v. Wilson,* 3d Dist. Union No. 14-94-8, 1994 WL 378992, *2 (July 20, 1994), quoting *In re Contempt of Gilbert*, 8th Dist. Cuyahoga Nos. 64299, 64300, 1993 WL 526788, *2 (Dec. 16, 1993).

{¶44} In this case, the record indicates that Spitzer contacted Thompson and directed him to bring a copy of the agreed judgment entry to the final pretrial hearing. Tr. 14. The record makes clear that a copy of the agreed judgment entry was presented to the trial court at the final pretrial hearing. Tr. 10, 14. Doc. 152, Ex. 1. Based on the statements at the show cause hearing, the trial court does not appear to have found Spitzer in contempt because a copy of the agreed judgment entry was not presented at the final pretrial hearing but because a fully executed agreed judgment entry was not presented at the final pretrial hearing due to his absence. Tr. 12, 14, 18. *See* Doc. 151.

{¶45} In its judgment entry, the trial court found Spitzer "in contempt for violation of th[e] * * * Order filed May 10, 2022." Doc. 151. However, the May 10, 2022 order nowhere directs Spitzer to present an agreed judgment entry— executed or otherwise—to the trial court at the final pretrial hearing. Doc. 125. Similarly, no subsequent order in the record contains such a directive. Thus, the trial court could not, under the facts of this case, find that Spitzer had defied a court order by failing to present a fully executed judgment entry at the final pretrial hearing. *See South Euclid Fraternal Order of Police, Lodge 80 v. D'Amico*, 29 Ohio St.3d 50, 52, 505 N.E.2d 268, 270 (1987).

{¶46} Further, as noted previously, Spitzer directed a staff member not only to notify the trial court in person of his situation but also to bring a copy of the agreed judgment entry to the final pretrial hearing. Tr. 8-10, 14. Again, given the

circumstances of this case, this is not the behavior of a person who intended to defy or disrespect the trial court. Accordingly, we conclude that the second reason given by the trial court in support of its decision to find Spitzer in contempt is not sufficient to establish beyond a reasonable doubt that he intended to defy the trial court.

{¶47} In conclusion, the evidence in the record does not support the trial court's finding that Spitzer failed to notify the trial court of his son's medical emergency until he sent an email to the trial court at 9:51 A.M. Further, the failure to present the trial court with an agreed judgment entry did not violate any existing court order. The evidence in the record does not establish beyond a reasonable doubt that Spitzer acted with the requisite intent to defy the trial court. For these reasons, Spitzer's first assignment of error is sustained. Accordingly, the trial court's order of contempt is vacated. *In re Gardner*, 12th Dist. Butler No. CA92-02-026, 1992 WL 333648, *3 (Nov. 16, 1992).

*Second Assignment of Error*

{¶48} Spitzer argues that the judge was biased by his prior involvement in this case and that his due process rights were violated by the fact that his contempt hearing was not overseen by an impartial judge. However, the resolution of Spitzer's first assignment of error renders the questions raised under this assignment of error moot. For this reason, we decline to address these issues pursuant to App.R. 12(A)(1)(c).

*Conclusion*

**{¶49}** Having found error prejudicial to the appellant in the particulars assigned and argued in the first assignment of error, the judgment of the Family Division of the Marion County Court of Common Pleas is vacated.

***Judgment Vacated***

**MILLER, P.J., concurs.**

**WALDICK, J., concurs in Judgment Only.**

**/hls**