[Cite as *Simmons v. Pierce*, 2026-Ohio-152.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Geneva Simmons

    Appellee

v.

Kendra Pierce

    Appellee

[Kory Moore - Appellant]

Court of Appeals No. L-24-1243

Trial Court No. CI0202301825

**<u>DECISION AND JUDGMENT</u>**

Decided:  January 16, 2026

* * * * *

Karin L. Coble, Esq., attorney for appellant.

* * * * *

**SULEK, J.,**

{¶ 1} Appellant, Kory Moore, appeals a judgment of the Lucas County Court of Common Pleas finding him in contempt of court following his refusal to provide chiropractic records in a personal injury action, ordering sanctions of $500 per day, totaling $14,500, and barring his recovery of any fees relating to the missing documents. For the reasons that follow, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} In February 2022, Geneva Simmons sought chiropractic treatment with Dr. Kory Moore at Procare Accident & Injury Center following an auto accident involving Kendra Pierce.  At that time, Simmons and Moore executed an agreement providing that any settlement would include provisions for the payment of Procare.  The agreement included the following records release provision:

> Procare Accident & Injury Center shall not release any medical records relating to the accident described herein unless and until Patient provides written proof that Patient has provided the Adjuster with a copy of this Agreement.  Patient specifically prohibits the release of their medical file until such time as Patient has so instructed Procare Accident & Injury Center in writing that the (responsible party) Adjuster, Insurance Company or tortfeasor has been advised of this agreement and has consented to the provisions contained herein.

Simmons signed a "Treatment Fee Agreement and Instructions to My Attorney" form. She also signed a Letter of Protection (LOP) which included a signature line for her counsel guaranteeing that any outstanding fees would be paid from the settlement proceeds.

{¶ 3} According to Moore, the documents were faxed to Simmons' attorney in November 2022.  Simmons' counsel sent letters in October and December 2022 and January 2023, with HIPAA-compliant authorizations, requesting medical records and itemized billing statements.  On February 11, 2023, Moore emailed Simmons' attorney enquiring as to why the LOP had not been signed.  Counsel responded that LOPs are not signed per counsel's law firm's policy.  The parties continued corresponding regarding

2.

the release of Simmons' medical records and the LOP with Moore stating that "[w]hen the records release clause has been met, I will certainly release the medical file at Ms. Simmons' direction."

{¶ 4} On March 10, 2023, Simmons filed a complaint in the Lucas County Court of Common Pleas against Pierce for damages stemming from the motor vehicle accident. On that date, Simmons' counsel sent a subpoena to Moore. No return receipt was filed with the court. On May 5, 2023, Simmons filed a Civ.R. 30 notice of deposition duces tecum of Moore, seeking medical records relating to her treatment following the accident. Moore did not respond.

{¶ 5} On June 9, 2023, Simmons moved to compel the production of Simmons' medical records stating that Moore ignored both the subpoena and notice of deposition. Counsel sent a copy of the motion to Moore at Procare prior to its closing at the end of June. Moore again did not respond.

{¶ 6} The court granted the motion to compel, ordering Moore to comply by August 24, 2023, by appearing in court with the requested records or be held in contempt of court. On July 11, 2023, the court sent a copy of the order by certified mail. The court filed the signed return receipt, listing the signature as "not legible."

{¶ 7} Moore failed to appear at the August 24 show cause hearing. After finding that Moore was served notice of the hearing, the court found: "Based upon the failure of Kory Moore, D.C., of ProCare Accident & Injury Center to appear, this Court finds he is

3.

in contempt and in direct violation of this Court's Order filed on July 7, 2023." The court then imposed contempt sanctions of $500 per day until the documents were produced.

{¶ 8} On September 22, 2023, the court found the parties joint stipulation of dismissal well-taken. In the judgment entry of dismissal, the court ordered that Moore and Procare were barred from collecting any payment relating to her treatment from either Simmons or the insurance company because the missing bills were not factored into settlement negotiations. Simultaneous to the dismissal order the court issued an order, sua sponte, enforcing the sanctions it imposed on Moore. The order stated that as of the date of the dismissal, Moore had accrued monetary sanctions of $14,500 and ordered that Moore remit payment within 60 days or the court would issue a body attachment for his arrest. The clerk's office sent copies of both orders to Moore.

{¶ 9} The court issued a body attachment after Moore failed to remit payment. On February 14, 2024, Moore's counsel entered an appearance indicating Moore's intent to turn himself in on the body attachment. On February 26, 2024, Moore moved for relief from judgment under Civ.R. 60(B) claiming that Simmons intentionally failed to inform the court of her contract with Moore covering the release of documents in order to avoid payment. He claimed that the failure qualified as a mistake or "material misrepresentation" under Civ.R. 60(B)(1) and (3). Moore further claimed that under Civ.R. 60(B)(4) and (5), Simmons' omission also qualified as an abuse of process in that she attempted to punish a nonparty to the action.

4.

{¶ 10} On April 18, and June 20, 2024, the court conducted a hearing on Moore's motion. During opening statements, Moore additionally claimed that the subpoena and motion to compel were never properly served on Moore. He further claimed that Procare was closed from July 2023 until February 2024 and the mail was not opened.

{¶ 11} Simmons' prior counsel testified regarding the issuance of the subpoena duces tecum and the notice of deposition. He acknowledged that the subpoena was unsigned and that he did not file a return of service with the court. Counsel also agreed that Moore was not a party to the action and was served a notice of deposition, not a subpoena.

{¶ 12} Procare office coordinator Dena Walker testified that she handles various administrative functions, including opening the mail. She stated that Moore closed the office from June 2023 until February 2024. The only evidence that he closed the office was a blank printout showing no appointments. Walker agreed to check on the building once a week, generally on the weekends, to make sure it was secure and collect the mail and place it in a box. During that time, she denied opening any mail and could not remember signing for any certified mail. She specifically denied signing for the July 9, 2023 order to compel.

{¶ 13} Moore testified that he closed the office from the end of June 2023 until February 2024 and resided out of state. He explained that while working at Procare, he commutes from Iowa and it is difficult to get associates to cover the office. For the first time, Moore decided to close for a "month or so" because it is slower in the summer; that

5.

stretched into six or seven months. He testified regarding patient reporting software printout showing that that there were no scheduled appointments during that time. Moore stated that there were no active clients when he closed the clinic in late June 2023.

{¶ 14} According to Moore, only he and Walker had keys to the office. Walker, unpaid and with no set schedule, stopped by to make sure it was secure and placed mail in a box in Moore's office. She opened only the mail that appeared to be a payment though any checks remained uncashed in his absence. Walker did not forward any mail to Moore in Iowa and placed no calls to Moore regarding the contents of the mail. He also denied having remote access to the work email account.

{¶ 15} Moore could not recall receiving any correspondence even after being shown three letters sent by Simmons' attorney in October and December 2022, and January 2023, all prior to the office closing, requesting that the records be produced. He denied receiving any correspondence from Progressive Insurance relating to the court proceedings.

{¶ 16} Moore did not recall receiving either the March 10, 2023 subpoena or the notice of deposition. His understanding was that the parties would resolve the case without the medical records and bills and that his payment would not come from the settlement proceeds.

{¶ 17} Simmons' counsel questioned Moore about the certified mail delivery of the court's order granting the motion to compel, left with an individual on July 19, 2023 at 9:20 a.m. with the return receipt signed with what appears a name with the initials

6.

"D.W.," order granting sanctions, left with an individual on September 7, 2023, at 9:41 a.m. with the return receipt clearly signed "Dena Walker," and the order enforcing sanctions, left with an individual on September 23, 2023, at 11:40 a.m., return receipt unsigned. Moore indicated that when he returned in February 2024, he went through all the mail and found the documents relating to the court proceeding. He discovered he had a warrant and turned himself in and immediately contacted his attorney who, in turn, entered an appearance with the court.

{¶ 18} On September 5, 2024, the court denied Moore's Civ.R. 60(B) motion for relief from judgment, concluding that he failed to establish mistake, inadvertence, or excusable neglect. The court discredited Moore's arguments regarding the validity of the subpoena duces tecum and the notice of deposition noting that he had an opportunity to challenge the documents in response to Simmons' motion to compel. The court also questioned Moore's assertion that he received none of Simmons' documents or any of the court's orders. The court noted that the three separate letters sent by Simmons' counsel, with HIPAA-compliant authorizations, were sufficient alone in requiring Moore to provide the requested records.

{¶ 19} The court then concluded that Moore's willful ignorance of the court and the proceedings did not support a finding of mistake or excusable neglect. It also rejected Moore's assertion that Simmons fraudulently failed to apprise the court of the treatment contract between she and Moore in her motion to compel. The court explained that this

7.

defense to performance could have been raised in response to the motion to compel of which Moore received service.

{¶ 20} The court further explained that Moore's and Walker's testimony regarding the closing of the office lacked credibility highlighting the fact that Walker just happened to be at the office on two occasions when certified mail was delivered. The court also discredited the "Appointment Statistics Report" evidence.

{¶ 21} Finally, the court found that Moore's willful and deliberate disregard of the court's orders over several months resulted in a settlement offer excluding the medical bills incurred by Simmons. Finding this unjust, the court upheld its waiver and discharge of the medical bills relating to Simmons citing it discretion when imposing sanctions for discovery violations under Civ.R. 37.

{¶ 22} This appeal followed.

## II. Assignments of Error

{¶ 23} Moore raises five assignments of error for review:

Assignment of Error One: The judgment of contempt is void as the underlying litigation was settled and dismissed on the same day the trial court journalized the judgment of contempt.

Assignment of Error Two: If the contempt order was based on the notice of deposition on May 5, 2023, the contempt must be vacated because no show cause order can be issued to a non-party based upon a notice of deposition pursuant to Civ.R. 30.

Assignment of Error Three: If the contempt order was based on the subpoena duces tecum of March 10, 2023, the contempt must be vacated as the subpoena was unsigned, not properly docketed, and not properly served.

8.

Assignment of Error Four: The trial court denied Dr. Moore Due Process when it deprived him of a contractual right to recover payments from his patient, the plaintiff in this matter.

Assignment of Error Five: Civ.R. 60(B) relief should have been granted.

### III. Analysis

### A. Post-dismissal Enforcement of Contempt Sanctions

{¶ 24} In his first assignment of error, Moore claims that the court's dismissal of the underlying case voids the civil contempt finding and the court's jurisdiction to enforce the judgment imposing the civil contempt sanctions.

{¶ 25} A court has the inherent authority "'to compel compliance of their lawfully issued orders . . .to uphold and ensure the effective administration of justice.'" *Cleveland v. Bright*, 2020-Ohio-5180, ¶ 16 (8th Dist.), quoting *Cramer v. Petrie*, 70 Ohio St.3d 131, 133 (1994). "Contempt proceedings 'are sui generis in the law' bearing "some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these." *State v. Wisener*, 2022-Ohio-4557, ¶ 24 (7th Dist.), quoting *Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201-202 (1973). The court's intent governs whether the proceedings are civil or criminal. *Id.* Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. *Andrews v. Andrews*, 2022-Ohio-3854, ¶ 6 (6th Dist.), quoting *State v. Arnold*, 2020-Ohio-3749, ¶ 11 (6th Dist.) Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court. *Id.*, quoting

9.

*Arnold* at ¶ 12. Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, while criminal contempts are most often described as offenses against the dignity or process of the court. *State v. Kilbane*, 61 Ohio St.2d 201, 204-205 (1980).

{¶ 26} A proceeding that begins as a civil contempt action may transform into a criminal contempt action. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555-556 (2001). In *Corn*, a prohibition action, relators argued that respondent court lacked authority over a civil contempt proceeding involving the production of documents by a nonparty where the parties settled the underlying action. *Id.* at 554. The court agreed with respondent's characterization of the proceeding as shifting from civil to criminal contempt when respondent learned that it was relators' practice to destroy records to prevent inquiries into his billing practices. The court noted that

> the purpose of the contempt sanction was no longer restricted to coercing relators into complying with the court's orders. Instead, its purpose was to vindicate the authority of the judge and to punish relators if she found that their practices impeded the judicial process and frustrated the civil discovery rules. Thus, what began as a civil matter became criminal in nature.

*Id.* at 556.

{¶ 27} The court then determined that "the dismissal of an underlying civil action does not divest a court of common pleas of jurisdiction to conduct criminal contempt proceedings." *Id.,* relying on *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-396 (1990) ("criminal contempt charge is likewise 'a separate and independent proceeding at

10.

law' that is not part of the original action. . . . A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated."). *See Kahler v. Capehart*, 2004-Ohio-2224 (3d Dist.), fn. 3 ("[E]ven if the Civ.R. 41(A) dismissal were deemed valid, we are not persuaded that the trial court did not have inherent authority to address the collateral matter of contempt for failure to obey an order of the court rendered prior to the court's dismissal notwithstanding the civil characterization given to the contempt proceeding by the trial court.").

{¶ 28} In addition, Ohio courts have held that a trial court may specifically retain jurisdiction over a civil contempt proceeding as a collateral matter following dismissal of the underlying action. *Dudley v. Dudley*, 2013-Ohio-859, ¶ 17 (12th Dist.); *Washington Mut. Bank v. Beatley*, 2020-Ohio-4658, ¶ 22 (10th Dist.). The language reserving jurisdiction must be clear and unequivocal. *Id. See also Infinite Sec. Solutions, L.L.C. v. Karam Properties, II, Ltd.*, 2015-Ohio-1101 (a court retains jurisdiction to enforce a settlement agreement if the dismissal entry incorporates the terms of the agreement or the court states that it retained jurisdiction to enforce the agreement).

{¶ 29} Under the specific facts presented here, Moore does not dispute his failure to provide the requested documents, his failure to appear at the contempt hearing, and the court's contempt finding on this basis—all of which were decided prior to the dismissal of the underlying action. Thus, whether the civil contempt proceedings converted into criminal proceedings upon the dismissal of the action or the court specifically retained

11.

jurisdiction over the collateral, contempt action, the court had jurisdiction to enforce its contempt finding and accompanying sanctions. Moore's first assignment of error is not well-taken.

### B. Basis of Contempt Finding

{¶ 30} Moore's second and third assignments of error challenge the manner and method by which he, as a nonparty to the personal injury action, was served with various discovery notices. Specifically, Moore's second assignment of error states that if the court based its contempt finding on his failure to respond to the notice of deposition issued on May 5, 2024, it was erroneous as only a party can be served with notice under Civ.R. 30. His third assignment of error challenges the validity of the March 10, 2023 subpoena duces tecum because it was unsigned, and the return of service was not docketed with the court.

{¶ 31} Moore's arguments should have been addressed in response to Simmons' motion to compel which the trial court properly served. The court recognized this in its entry denying relief from judgment noting:

> Procare employee Deanna [sic] Walker testified she would occasionally stop by Procare while it was closed to collect mail and place it on Moore's desk. However, she happened to be present on both July 20, 2023 and September 12, 2023 when the Court's compel order and order for sanctions were delivered respectively, both of which she signed for an accepted as shown on the certified mail receipts. Ex. PC 7. Even if Moore was in Iowa during the time Procare was supposedly closed, service would have been deemed complete as per the Civil Rules.

12.

Further, in scheduling the show cause hearing the court afforded Moore the opportunity to either provide the requested documents or explain why he could or would not comply. The hearing could have provided Moore a second chance to contest the validity of the documents and the underlying contract between Procare and Simmons.

{¶ 32} Finally, the court's August 25, 2023 judgment entry, clearly stated that "[b]ased upon the failure to Kory Moore, D.C. of ProCare Accident & Injury Center to appear, this Court finds he is in contempt and in direct violation of this Court's Order filed on July 7, 2023." This evidences that the court held Moore in contempt because of his failure to appear at the show cause hearing.

{¶ 33} Accordingly, the trial court did not err by determining that Moore received notice of and failed to comply with its direct order, thus, finding him in contempt and ordering sanctions. Moore's second and third assignments of error are not well-taken.

### C. Right to Recover

{¶ 34} Moore's fourth assignment of error challenges the portion of the court's September 23 notice of dismissal barring his recovery of payment for his chiropractic services provided to Simmons for the accident at issue in the case. He contends that the court imposed the sanction without due process notice protections.

{¶ 35} A trial court has broad discretion in fashioning contempt sanctions to compensate an injured party. *First Bank of Marietta v. Mascrete, Inc.*, 125 Ohio App.3d 257, 266 (4th Dist. 1998). Generally, the imposition of sanctions requires prior notice and an opportunity to be heard. See R.C. 2705.03. What due process is required varies

13.

"'depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur.'" *Angotti v. Jones*, 2024-Ohio-3222, ¶ 21 (6th Dist.), quoting *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996); *First Bank* at 268.

{¶ 36} Here, Moore and Simmons contracted for chiropractic services. The contract emphasized that Procare would satisfy its outstanding bills through the settlement proceeds. At the motion hearing, Moore specifically acknowledged that "[w]e work on a contingency waiting to get paid after the settlement." He explained that the bills could be adjusted where "the settlement is not enough for everyone to have a reasonable amount." Patients were not required to pay any up-front charges or provide proof of the ability to pay and were billed only after an insurance settlement. It follows, thus, that where a settlement is entered into exclusive of the medical bills, Moore could not reasonably anticipate recovery for such bills. Moore had the option of providing the requested records and intervening in the action to assert a breach of contract claim against Simmons. He chose not to and Simmons should not be penalized by Moore's failure to participate in the proceedings. Moore's fourth assignment of error is not well-taken.

### D. Relief from Judgment

{¶ 37} Moore's fifth and final assignment of error asserts that the court erred by denying his Civ.R. 60(B) motion for relief from judgment. Entitlement to Civ.R. 60(B) relief requires that a movant "'demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a

14.

reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.'" *Moore v. ThorWorks Industries, Inc.*, 2024-Ohio-1617, ¶ 91 (6th Dist.), quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. An appellate court reviews a trial court's denial of a Civ.R. 60(B) motion for an abuse of discretion. *Id.*, citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988).

{¶ 38} Moore claims that he established the right to relief from judgment under Civ.R. 60(B)(1), mistake, and (B)(3), misrepresentation, based on Simmons' counsel's failure to properly serve the subpoena and notice of deposition or acknowledge the contract between he and Simmons. Under Civ.R. 60(B)(4), Moore claims it was no longer equitable to enforce the contempt and the court's attempt to retain jurisdiction failed because it had prior knowledge that the parties were entering into a settlement. Finally, under Civ.R. 60(B)(5), he should be granted relief from the contempt order based upon the court's inherent power to relieve a person from an unjust judgment.

{¶ 39} On review, based upon our disposition of Moore's first, second, and third assignments of error, the trial court did not abuse its discretion by denying Moore's motion under Civ.R. 60(B) because Moore failed to present a meritorious claim for relief and the court's order imposing sanctions was not unjust. Moore's fifth assignment of error is not well-taken.

15.

## IV. Conclusion

{¶ 40} Upon due consideration, the judgment of the Lucas County Court of Common Pleas is affirmed.  Pursuant to App.R. 24, Moore is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

JUDGE

Myron C. Duhart, J.

JUDGE

Charles E. Sulek, J.
CONCUR.

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.